MARY T. LEIGHTON, Executrix, Appellant, v. FLORA LEIGHTON et al., Cross-appellants; WALTER B. JORDAN, JR., et al., Appellees.

WILLS: Construction—Double Legacies to Same Legatee. When the *same* sum of money is given twice to the *same* legatee in the *same* writing, the rebuttable presumption ordinarily prevails that the testator intended only *one* gift.

WILLS: Specific and General Legacies Contrasted. Legacies reviewed, and held "specific," within the meaning of a codicil revoking all "specific" legacies.

WILLS: Construction—Survivorship Among Residuary Legatees. Will and codicils construed, and held to exclude application of the doctrine of survivorship among residuary legatees.

DESCENT AND DISTRIBUTION: Persons Entitled—Legatees Under Will. A legatee under a will who is also an heir may take a share in intestate property.

WILLS: Rejection by Widow—Effect. A widow who rejects the will and takes her dower may not later take an interest in intestate property of her husband.

APPEAL AND ERROR: Who May Appeal—Executrix Without Personal Interest. An *executrix* may appeal from a decree construing a will, even though, as *widow,* she has renounced all interest under the will.

*Appeal from Wapello District Court.*—C. W. VERMILION, Judge.

JUNE 23, 1922.

ACTION in equity, to construe the will of Alvin C. Leighton,

deceased. The plaintiff first appealed from the decree of the district court, and is the appellant. Others of the defendants, as indicated in the title, thereafter served notice of appeal, and will be referred to as cross-appellants. Others of the defendants have not appealed. The issues, facts, and findings of the trial court are set out in the opinion.—*Affirmed.*

*McNett & McNett, Jaques, Tisdale & Jaques,* for appellant.

*Curtis L. Day, Gillies & Daugherty, Stipp, Perry, Bannister & Starzinger, Work, Lewis & Work,* and *Gilmore & Moon,* for cross-appellants.

*Harry Weiss,* for appellees.

Preston, J.—We find this statement in the somewhat extended opinion of the trial court, in regard to the will and three codicils probated as the will of deceased:

"These four documents, when taken together, as they must be, constitute a truly bewildering attempt at a testamentary disposition of property. It is impossible to avoid some expression of the amazement inevitable upon discovering that a businessman, capable of accumulating so large an estate, could so befog its final disposition. A further commentary upon the futility of the effort evidenced by the document in hand is suggested by the fact that such an elaborate and long considered attempt to control the disposition of property after the death of the owner should result in such a large measure of intestacy. * * * All that can be claimed for the conclusions reached is that they effect a disposition of the estate in accordance with what are believed to be the controlling provisions of the will and codicils, under the situation presented, and in accordance with the law as it is understood to be. Some advantage is admittedly taken of the fact that counsel are interested in conclusions, rather than reasons. * * * So far as the conclusions reached are in conflict with cited authorities, it may be said that the views expressed are believed to be in accordance with the weight of controlling authority."

Counsel for appellant say that:

"Of all the numerous cases brought to this court involving the interpretation of wills, the books will fail to disclose any case wherein more confusion, more contradiction, as between the several instruments, and more opportunity for diversity of opinion as to what interpretation should be ultimately placed upon the will, than will be found here. * * * It will be for Your Honors to say, after the case is discussed, what the intention of the testator actually was, in respect to the conflicting views concerning the meaning of his will. When you have done the best you can, who but Omnipotence can say whether, after all, you have arrived at his intention?"

We approach the subject with some apprehension. Mary T. Leighton, who is executrix, is also the widow of deceased. She elected to take, not under the will, but under the law. Cross-appellant Flora Leighton is the cousin of deceased, and a legatee. All other parties say that the trial court decided correctly as to her. She is concerned in the construction of a part of Paragraph 3 of the original will and first codicil, and a part of Paragraph 5 of the first codicil. Defendants Alvin and Joseph are nephews of deceased, sole heirs of a deceased brother; defendants James and Emily are children of Henry Leighton, deceased, who was found by the trial court to have been the son of testator, recognized by him as such. The plaintiff, in her petition, did not recognize James and Emily as grandchildren of testator, and there was a contest as to the heirship, which, by agreement, was tried out first. We do not understand that matter to be involved in this appeal, though the notice of appeal was introduced in evidence. Testator left no children surviving, and there were no children of plaintiff, Mary, and testator. Defendants James and Emily join in or supplement the argument for Alvin and Joseph, and in a way, make the same claims. Defendants the three Jordans are the sole heirs of a deceased sister. They appeared, to give jurisdiction, but make no contest. Defendant Thompson is the sole heir of a deceased sister. There is no argument in her behalf.

Testator died July 1, 1917. The will and codicils were probated, and plaintiff appointed executrix and trustee, August 28, 1917. The original will is dated October 2, 1911; the first

codicil October 16, 1912; the second codicil January 11, 1916; and the third codicil two days thereafter. This last is entitled, "Saving Clause to Last Will and Testament of Alvin C. Leighton." It refers to the original will and two codicils, and states that:

"Said instrument above named, taken altogether being his whole will and testament; subject to and saving the terms and provisions of said above named three instruments, when taken and together construed according to their true meaning, intent, and effect, do will devise and bequeath all the rest, residue, and remainder of my estate unto my wife, said Mary T. Leighton. This clause not to conflict with, nor defeat any of the provisions of my last will or codicil or codicils thereto, but more completely to save and strengthen the same."

Before setting out further provisions of the will, some preliminary matters will be stated. James Leighton was born March 19, 1897, and is still living and unmarried. Emily was born August 16, 1903, and is still living and unmarried. Margaret Clara Benson survived testator, and afterwards married one Gove, September 4, 1917, and is still living, and has no heirs of her body. It appears that there is another action pending, by James and Emily against plaintiff, executrix, pertaining to the ownership of the Leighton Block in Ottumwa; and because of this, and perhaps for other reasons, it is stipulated that the value and net value of the estate cannot be definitely now determined. It was stipulated that, for the purposes only of the interpretation of the will and codicils, the net value at the time of the death of testator was in excess of $50,000, and not more than $100,000; that it was in excess of $100,000, and not more than $150,000; that it was in excess of the sum and value of $150,000. Appellant states in argument that it is claimed in the pleadings and admitted that the estate was worth at least $150,000, and that, according to the figures of James and Emily, it amounted to more than $300,000. It was stipulated that the ownership of the Leighton Block was to be left open for future adjudication, and that the stipulation as to value should not bar any party to the action hereafter, in the further progress of the settlement of the estate, from proving the actual value

of the property. We take it that the Bensons, and perhaps one or two others mentioned in the will, are heirs or relatives of the wife of testator. We shall attempt to state the provisions of the will and codicils by condensing as much as may be, and will attempt to give all provisions which have any bearing on the questions presented.

The original will provides (Paragraph 1) that, after the payment of the debts, testator wills to his wife, for the period of her natural life only, all property real and personal; appoints her executrix and trustee; and provides that she shall have the right and power to sell and convey any real estate to pay debts, and that, after debts are fully paid, she may, if she thinks best, sell any real estate and use the proceeds in paying bequests under the will, except such legacies as are payable only during the life of the legatee; the wife to use of the net income all that is necessary for living and household expenses, travel, and everything she may require in way of expenses, without restrictions.

"Second: In the event that upon the settlement of the estate there shall be but $50,000 or less, then one third to Margaret Clara Benson, if living; one third to James Leighton if living; the remaining one third to Emily Frances Leighton, if living, but the two last named shall not have possession or control of the principal but receive only the income thereof during their natural life, the principal to be managed by Mary T. Leighton, trustee, to be paid to the heirs of the body of said James and Emily within one year following the death of said James and Emily.

"Third: If the net estate amounts to more than $50,000 then the second $50,000 or less, if there be not $100,000, shall be divided; 1/10 each to four Bensons. The net income of 1/10 of said $50,000 fund to Amanda and Elizabeth Seip, payable as they may desire during the natural life of said legatees, upon the death of one of the two the whole of said income to go to the survivor of the two during her natural life. The net annual income upon 1/5 of said $50,000 fund to be paid to Flora Leighton, during her lifetime. The net annual income of the remainder of said $50,000 fund to be paid semiannually share and

share alike to Alvin and Joseph upon the decease of one of the two the said entire income to go to the survivor of the two for his natural life. Upon the demise of all of the said legatees, subject to the provisions above, the said principal ($30,000) shall fall into my estate and be disposed of under the other and further terms of this will.

"Fourth: If the estate net more than $100,000 then the first $50,000 above the $100,000 (or less if there should not ·be $150,000) shall be distributed: One fourth to said Margaret Clara Benson. One fourth to James Leighton. One fourth to Emily Frances Leighton. One tenth thereof to the children of Benjamin S. Benson. The net annual income of the remaining $7,500 of said last mentioned $50,000 fund to be paid annually share and share alike to· Alvin and Joseph, all of said income to go to the survivor of the two until the death of the latter, and upon the demise of both, the said principal of $7,500 to fall into my estate and be disposed of under the terms of this will.

"Fifth: The bequests in favor of James and Emily in Paragraph four shall not pass into their possession or control but shall remain with the trustee until said legatees attain respectively, James 25 years, Emily 22 years. In the event either the said Margaret, James or Emily shall die without heirs of body before coming into full possession, title and control under my will, then all the devises and bequests in favor of deceased shall go to the survivor or survivors of the three, share and share alike, and shall all three so die, then all the bequests and devises in my will in favor of the three shall revert to my representative or trustee as a part of my estate and be disposed of as in case of intestacy at my death.

"Sixth: If the estate net more than $150,000 then all in excess of that sum as well as all sums falling into my estate after payment of life annuities and including also all other sums accruing from whatever source and subject to all other provisions hereof, I will, devise and bequeath unto Margaret Clara Benson.

"Seventh: I have provided, however and declare that all the terms and provisions of this will following the second paragraph, are dependent on the condition that my estate, above

all my indebtedness at my death shall amount to more than
$100,000 and should it not amount to more than the last named
sum then all the provisions · herein following the said second
paragraph shall be of no force nor effect and in such event all
of my estate above $50,000. I will, devise and bequeath unto my
wife. And as long as she lives, my wife shall not be forced to
pay any part of the principal of any devise or bequest and the
distribution of my estate amongst those named in my will is
hereby postponed until the death of my wife, except she of her
own choice shall direct an earlier distribution."

The first codicil reads that:

"For the purpose of relieving my surviving widow of all
embarrassment in the exercise of her right of election, do make
the following as a codicil to my will of October 2, 1911:

"Par. 1. Should my widow preferring to make provision
for her relatives named in my will or for any reason elect to
take under the statutes of Iowa, then the provisions of my said
will in favor of Margaret Clara Benson and four other Ben-
sons, the two Seips, and each of them shall become null and void,
stricken out and wholly revoked.

"Par. 2. James and Emily Leighton named in the second
paragraph of said will shall take each one half instead of one
third the same to be held, enjoyed and taken only in the events
and under the conditions named in said second paragraph.

"Par. 3. If after satisfying said second paragraph of will
there shall be realized for distribution beyond the one-half
dower taken by my widow under such election a further sum of
$25,000 or less, then Flora Leighton named in third paragraph
of said will shall have the income for her natural life on $5,000
of said $25,000 fund and the balance of said fund (not over the
sum of $20,000) shall be held and the income thereon paid to
Alvin and Joseph named in third paragraph of will for the
term of their natural life, the survivor of the two to have all of
said income until his death.

"Par. 4. If the estate is above $100,000 then one half of
such excess (this assuming that my widow has elected to take
the one half of excess over said $100,000) shall be disposed of
as follows: To James Leighton and Emily each one third in

fee, said Alvin and Joseph to share equally for life the annual income on the remaining one third of such one-half excess.

"Par. 5. All specific bequests named in my said will in favor of James, Emily, Alvin, Joseph, and Flora and each of them, unless herein expressly preserved to them, are hereby revoked. All property or funds supporting annuities or life estates as soon as such annuities or life estates have expired, shall fall into my estate under the provisions of my said will and this codicil.

"Par. 6. The foregoing provisions of this codicil are void shall my surviving widow elect to take under my said will.

"Par. 7. I hereby and without condition or contingency, strike from sixth paragraph of my said will the name Margaret Clara Benson and in lieu thereof, designate, namely; said James, Emily, Alvin and Joseph, as named in the second, fourth and fifth paragraphs of will. All the residue and remainder I will, devise and bequeath to said James and Emily to become payable and to be controlled under the provisions of fifth paragraph of will.

"Second Codicil. All bequests, devises and provisions whatsoever in either or both said will and codicil, for the use and benefit of James and Emily, or them or either of them I hereby fully cancel, revoke and wholly set aside and in lieu thereof make for said James and Emily, that is for each of them, the following provision: I will, devise, bequeath and direct that for and during the period of the natural life of them, said James and Emily my trustee shall have and hold out of my estate the principal sum of $15,000 and the income thereof whether from the property representing said sum or the interest derived from said sum of $15,000 loaned at interest as the case may be, shall be paid to said James quarterly at the end of each quarter year for and during the natural lifetime of said James. In like manner and time trustees shall pay unto said Emily each year quarterly and during the natural lifetime of said Emily the income from the sum of $15,000, the principal sum, as in the case of said James aforesaid, to be held by trustee, either in property or money loaned at interest. Upon the event of the death of said James the said trust fund of $15,000

shall fall into my general estate and upon the death of the said Emily the said other trust fund of $15,000 shall fall into my general estate, provided however that it is to be understood as my intention that the income for life from the said trust fund of $15,000 each to said James and Emily shall be the entire sole and only bequest, devise or provision in any way to be derived under my will or its codicils by the said James and Emily or either of them.''

The third codicil has been before set out.

The trial court decreed that the widow, having elected to take her distributive share, is entitled to one third in value of all the real estate of testator located in the state of Iowa, free from debts and expenses of administration, and one third of the personal estate, after the payment of debts and expenses of administration. The widow's dower or distributive share in real estate owned by testator without the state of Iowa was not adjudicated. The court further decreed that the remainder of the estate after the widow's share, as stated, should be distributed as follows:

(1) Under the second codicil, the trustee ''shall set apart and hold in trust the sum of $15,000; and the income thereof, whether from the property representing said sum or the interest derived from said sum of $15,000 loaned at interest, as the case may be, shall be paid to James Leighton quarterly during the lifetime of said James; that, under said second codicil, the trustee shall set apart and hold in trust the additional sum of $15,000 and the income thereof, whether from the property representing said sum or the interest, shall be paid to Emily Frances Leighton quarterly, during her natural lifetime; that, upon the death of said James, the principal of said trust fund of $15,000, the net income of which was bequeathed to him for life only, shall fall into the general estate of testator, and be disposed of under the sixth paragraph of his last will, as hereinafter construed and provided; upon the death of Emily, the principal of said trust fund of $15,000, the income of which was bequeathed to her for life only, shall fall into the general estate of testator, and be disposed of under the sixth paragraph of the will, as hereinafter construed and provided.''

(2)   It was further decreed that of and from the property and assets of said estate then remaining, by virtue of Paragraph 3 of the first codicil, the trustee should set apart and hold in trust the sum of $5,000, and the income thereof should be paid to Flora Leighton annually during the term of her natural lifetime; that, upon the death of said Flora, said trust period should end, and the trust should cease and determine, and the principal of said trust fund of $5,000, the income of which was bequeathed to her for life only, should fall into the general estate, and be disposed of under the sixth paragraph of will as construed.

(3)   It was further decreed that from the property and assets of the estate then remaining by virtue of Paragraph 3 of the first codicil, the trustee should set apart and hold in trust the sum of $20,000, and the income thereof should be paid annually, one half to Alvin and one half to Joseph, for and during the term of their joint lives, and upon the death of either, the entire income should be paid annually to the survivor for his life; that, upon the death of the survivor, the principal of said trust fund of $20,000, the income of which was bequeathed equally to Alvin and Joseph for life, etc., should fall into the general estate, and be disposed of under the sixth paragraph of the last will, as construed.

(4)   It was further decreed that the trustee and executrix should file a complete inventory of all the property, and if all the property and assets, wherever situate, above all indebtedness, should yield a sum of above $100,000, two ninths of all excess realized above $100,000, under Paragraph 4 of said first codicil, should be set apart and held in trust, and the income should be paid annually, one half to Alvin and one half to Joseph, for their joint lives, and upon the death of either, one half of said last named income fund should fall into the general estate, to be disposed of as provided by Paragraph 5 of this decree, and the income derived from the remainder of said last named trust fund should then be paid to the survivor for life, and upon the death of the survivor of the two, the principal of said one half of said trust fund should fall into said general estate, to be disposed of as provided by Paragraph 5 of the

decree, excepting real estate situated outside of the state of Iowa, out of which last the distributive share of the widow should be set off, and of what remained thereof, the one third should be income property of said Joseph and Alvin, the two thirds to fall into the general estate, and pass with the residuary portion of said estate, under the provisions of Paragraph 5 of the decree.

(5)  It was decreed that "the sixth paragraph of the will, as modified by the first and second codicils, which, as modified, reads, 'Should my estate net more than $150,000, then all in excess of that sum, as well as all sums falling into my estate after payment of life annuities and including also all other sums accruing from whatever source, and subject to all other provisions hereof, I will, devise and bequeath to Alvin C. Leighton and Joseph Leighton,' * * * was not a devise to a class, and that the cancellation and revocation by the second codicil of the bequest therein to James and Emily did not serve to augment the shares of Alvin and Joseph, the remaindermen, but that they take, under said Paragraph 6, but one half of the residue and remainder of said estate, and that the remaining one half of said residue and remainder is intestate property, and descends to James and Emily as the heirs at law of testator. The court further decrees that of the rest, residue, and remainder of said estate, including the principal of all trust funds after the death of the life tenants respectively, and including also all other sums accruing from whatsoever source, is bequeathed and descends in equal parts in value, as follows:  One-fourth part of share under Paragraph 6 of the will to Alvin; one-fourth part of share under Paragraph 6 of the will to Joseph; one-fourth part or share by the statute of descent to James; and one-fourth part or share by the statute of descent to Emily."

The court further held and decreed that the provision or clause which closes the second codicil, after the proviso, does not operate to prevent James and Emily from inheriting, as heirs at law, the property undisposed of by will. Provision was made that the executrix should retain and pay collateral inheritance tax chargeable to Flora, Joseph, and Alvin. It was further de-

creed that all the incomes on funds therein provided for should begin to accrue from the date of the death of the decedent, and be payable July 1, 1918.

In a general way, the contentions of appellant are that there are two bequests to Flora, the second provision being cumulative, and not substitutional. In this, appellant and cross-appellant Flora stand together; while the arguments on behalf of other parties contend that the holding by the trial court was correct. Appellant further contends that there are no specific legacies, and in this some of the other cross-appellants concur. Appellant further contends that James and Emily should not participate in the intestate property; that the widow and the general heirs are entitled to take the intestate property; that the widow is entitled, out of the two thirds of such property remaining, to the interest defined by Section 3379, Code Supplement, 1913; that the three Jordans, defendants, will take one third, Joseph and Alvin one third, and Mary Inez Thompson one third, of the remaining intestate property. These contentions are made by the appellant alone. Neither the Jordans nor Thompson assert such a claim. Appellant cites authority to the proposition that a testator may by will disinherit an illegitimate child, but the matter is not further argued. We do not understand that there is any claim that any of the parties to this proceeding are illegitimate. As we understand their claim, Alvin and Joseph do not claim as broadly as to their interest as does appellant; and, as already stated, James and Emily on one side, and Alvin and Joseph on the other, in a way are standing together. As to these four, we do not understand that they seriously contend that as to them the trial court did not properly construe the will. One of the main propositions relied upon by them is that the plaintiff has no right of appeal. This will be referred to later in the opinion. We have indicated the points of difference.

There are several propositions upon which the parties representing the several interests do not disagree. This being so, we are inclined to adopt, in part, the reasoning and argument of the trial judge, who filed a written opinion, which, by reference, was made a part of the decree. He appears to have given

the case careful consideration. The widow having elected to take under the law, there is no controversy as to her share, except that, as stated, she claims the right to further participate in the intestate property.

1. The general scheme of the testator, in the original will at least, divided the estate into funds of $50,000 or less, up to a possible $150,000, and disposed of these funds separately, by

1. WILLS: construction: double legacies to same legatee.

providing for bequests to be paid out of a particular fund, or to be paid only if the estate amounted to sufficient to create that particular fund. In the first codicil, made, as it recites, to relieve the widow of embarrassment, and made in contemplation of the possibility that the widow might, as she did, elect to take under the law, the testator, we think, preserved this arrangement, at least up to $100,000. Some confusion arises from the fact that testator was evidently laboring under the erroneous belief that, if the widow should elect to reject the provisions made for her in the will, she would be entitled, under the law, to one half of the estate, when, in fact, she could take but one third. Appellant concedes in argument that testator was mistaken, because they say that the law gave her but one third. It seems to be clear that, the disposition of parts of the first $50,000,— or the whole estate, if it amounted to less than that,—to various relatives of the widow, as made in the original will, having been revoked by the first codicil, and the disposition made thereof to James and Emily in the first codicil having been revoked by the second codicil, there remains no specific disposition of that particular fund or part of the estate. Still, the second codicil provides that James and Emily shall each have the income for life from $15,000, without designating any particular fund or part of the estate from which the principal shall come, and without regard to the amount of the estate. Hence they are entitled to the benefit of that provision before other bequests, to be paid out of subsequent funds, or only if the estate shall be of certain greater amounts, are to be considered. The original will provided that, out of the second $50,000, or less if the estate amounted to no more than $100,000, portions amounting to five tenths should go to the Bensons (which pro-

vision is no longer material, in view of subsequent codicils);
and that Flora should have the income for life upon one fifth;
and that the "income of the remainder of the $50,000 fund"
was to be paid to Alvin and Joseph. In the first codicil, the
second $50,000 is disposed of on the mistaken assumption that
the widow would take half, by providing that Flora shall have
the income for life on $5,000, and Alvin and Joseph the income
for life from the balance, "not over $20,000." We think the
trial court correctly held that these provisions of the codicil
are substitutional, taking the place of the provision of the orig-
inal will just referred to, rather than cumulative. Whether they
are substitutional or cumulative will be referred to in a moment.

As. stated, both sets of legacies, to so describe them, were,
under the different conditions contemplated, payable out of
the same fund, which, after deducting the widow's share, would
have been sufficient for the payment of both,
2. WILLS: specific and general lega-cies contrasted. and, upon the testator's erroneous assumption
that the widow would take one half, just suf-
ficient for the payment of those provided for by the codicil.
The provision of Paragraph 5 of the first codicil to the effect that
all "specific bequests" named. in the will in favor of James,
Emily, Alvin, Joseph, and Flora, unless expressly therein pre-
served to them, are revoked, seems to strengthen this view,
whether it amounts technically to a revocation or not; for there
is nothing else- in the will to which it can apply. What has
been said of these bequests in the original will shows them to be
more nearly within the class of specific legacies than general,
and they are, therefore, expressly revoked by the provision just
referred to. In this connection, counsel for appellant and coun-
sel for Flora contend that there are no specific legacies contained
in the will or codicils. Counsel for Alvin and Joseph concede
that, strictly speaking, this is so. It will be observed that testa-
tor himself used the expression "specific" bequests, as to Flora
and the others. All concede that, where a testator uses in his
will technical words or terms, or words having a definite legal
signification, he will be presumed to have used them in that
sense, and the will should be so construed, unless a clear in-
tention to the contrary is apparent from the context. Though

counsel for appellant cite authority to support the rule just
stated, at one place in their argument, in discussing the rights
of James and Emily, they suggest that the witness Lewis, who
was a lawyer, was put upon the stand to show that he prepared
these documents for testator, and that these various technical
provisions were the language of a lawyer, and not that of the
client.   Counsel misapprehend the record.   The evidence of Mr.
Lewis is that the original will and all the codicils except the last
were written by testator himself; that he was several months
in its preparation; that it was written in his handwriting; and
that witness either copied it or had it copied: but he says that
the phraseology is that of the testator himself.   A specific be-
quest or legacy is defined in some of the cases as a designated
article or specific part of the testator's estate which is identified
and distinguishable from other things of the same kind, which
may be satisfied by delivery of the specific thing or portion.   It
may be looked upon as one which the testator has separated
from the general mass of his property for the benefit of a par-
ticular legatee; and in ascertaining whether a legacy is specific,
recourse should be had to the intention of the testator, and this
should be gathered from the language used in creating it, in the
light of the circumstances of the testator and the property
which he is disposing of in his will.   No special words are re-
quired to make a bequest specific.   28 Ruling Case Law 290.   A
characteristic of a specific legacy is its liability to ademption
and to being more readily revoked.   A general legacy is defined
as one which is payable out of the general assets of a testator's
estate, such as a gift of money or other things in quantity, and
not in any way separated or distinguished from other things of
like kind.   28 Ruling Case Law 291.   Between the two, and
partaking of the nature of both, are demonstrative legacies, as
where testator intended to make a gift in the nature of a gen-
eral legacy, but it is given with reference to a particular fund,
as a primary source of payment.  28 Ruling Case Law 292.   As
said, we think that, under all the circumstances, the legacies
now under consideration are more in the nature of specific
legacies, and that the trial court properly so held.   But in any
event, we suppose it would not be contended that testator could

not revoke even a general bequest. We think it was the intention of testator to revoke what he had given, as to those being now considered, and especially those to Flora. The bequest to her made in the will was not "expressly" or otherwise "preserved" to her by the codicil; hence it was revoked. We think, too, that the trial court properly held the provisions to be substitutional. There is a presumption against double portions. The courts, in endeavoring to arrive at the true intention of a testator, incline against any construction of the will which would give double portions, to the partial exclusion of others whose claims are equally meritorious. Accordingly, when the same sum of money is given twice to the same legatee in the same writing, it is generally held that he can take only one of the sums bequeathed, the latter sum being presumed to be a substitution of the former; and it is incumbent on the legatee to rebut this presumption, and show a contrary intention. 28 Ruling Case Law 234. A testator may provide for the substitution of another devisee in place of the first one, and in such a case, the substituted devisee will take the estate devised, subject to the same conditions as applied to the original gift; or there may be a substitution of a class of legatees in place of another class. 28 Ruling Case Law 295.

Considering now more particularly the claim of Flora Leighton: By Paragraph 3 of the original will, divers money legacies are conditionally bequeathed—some outright. As to others, the gift is only for the income for life on designated amounts. The testator then provided:

"The net annual income upon one fifth of said $50,000 fund to be paid to Flora Leighton during her lifetime."

This is the only time her name appears in the original will, and the only bequest therein to her is the income for life on a fund of $10,000. Upon her death, the principal is to fall back into the estate, and be disposed of as therein provided.

By Paragraph 5 of the first codicil, testator provided:

"All specific bequests named in my will in favor of * * * and Flora Leighton and each of them, unless herein expressly preserved to them, are hereby revoked."

What we have said disposes of the claim of Flora Leighton.

We think the trial court correctly construed the will in regard to her. What we have just said applies in principle to some of the other bequests.

Proceeding now to other provisions, the fourth paragraph in the original will provided for a third fund of $50,000, out of which Alvin and Joseph were to receive the income from $7,500. In the first codicil, all in excess of $100,000 is otherwise disposed of, and the bequest just referred to is expressly revoked by the provision of Paragraph 5 thereof. Though, as said, the first codicil has no provision for a third fund of $50,000, it does provide, in Paragraph 4, that, if the estate shall, above all indebtedness, yield a sum in excess of $100,000, one half of such excess, still assuming the widow to take one half, shall go, one third in fee to James and Emily, each, and that Alvin and Joseph shall share equally in the income for life on the remaining one third. It is claimed this provision is a disposition of the entire estate, and that it leaves nothing to be disposed of by a residuary clause. We think it does not do this, but merely disposes of so much of the estate as shall, upon the original valuation, and after the payment of debts, exceed $100,000. It does not, in terms, cover the remainder after the termination of life estates, nor portions of the first and second $50,000 funds left undisposed of by the revocation of the bequests to James and Emily, and the testator's mistake as to the share the widow would take upon her election to take under the law. It is not implied that the testator could have then anticipated these contingencies; but the paragraph now under consideration is not, in its terms, a residuary clause providing for a disposition of the residue of the estate in all contingencies. The provisions of the first codicil so far considered are expressly made applicable only in case the widow elects to take under the law. There follows, in Paragraph 7, a provision expressly applicable to all situations, whereby the beneficiary named in the sixth paragraph of the will is changed. It is urged that, in view of Paragraph 1 of the first codicil, the sixth paragraph of the will was to be effective only in case the widow took under the will; but the language of the testator is, "I hereby and without condition or contingency" strike out the name of the beneficiary

in the sixth paragraph and substitute the names of others. This, so far from limiting it to the situation that would exist if the widow took under the will, expressly and emphatically negatives the idea that the operation of this provision is to be limited by any condition or contingency whatever. In so far as the sixth paragraph of the will provides for a disposition of the estate in excess of $150,000, original valuation, it is superseded by Paragraph 4 of the first codicil; but in so far as it disposes of "all sums falling into my estate after payment of life annuities,· and including also all other sums accruing from whatever source," it is still effective. Under the operation of the second codicil, all former provisions for James and Emily are expressly revoked. This being so, it is of little importance to consider what the testator may have had in mind in the residuary clause of the first codicil. The residuary clause in the third codicil also became inoperative, on the widow's rejection of the provisions of the will in her favor. It could not have been intended to be operative in that event. Neither of these residuary clauses could have had the effect to revoke a residuary disposition previously made, and not expressly revoked; but since neither of them, for the reasons given, has any present effect, it is unnecessary to speculate as to testator's intent in framing them, since they cannot affect the construction of the will and codicils under the existing situation, save, perhaps, in one respect, to be referred to later. Under this construction, of the first $50,000, after the widow's one third, $16,666.67, comes out, there remains $33,333.33, out of which there shall be held by the trustee, for the benefit for life of James and Emily, each, $15,000, or $30,000 in all, as provided in the second codicil,— leaving the remainder, or $3,333.33, to be disposed of under the sixth paragraph of the will, as changed by subsequent codicils, as well as the principal of the sums set apart for the benefit of James and Emily at their respective deaths.

Of the second $50,000, after the widow's one third, $16,666.67, is taken out, Flora is entitled to the income for life upon $5,000, and Joseph and Alvin to the income for life on $20,000, leaving the remainder of the two thirds, $8,333.33, to be also disposed of under the sixth paragraph of the will as

changed; and likewise, at the death of Flora, the $5,000 on which she receives the income, and on the death of both Joseph and Alvin, the $20,000 of principal on which they and the survivor of them receive the income.

.Of the excess above $100,000 of original valuation, after the widow takes one third, the remainder passes under Paragraph 4 .of the first codicil. Joseph and Alvin take the income from one third of two thirds, or two ninths, of the whole for life. We understand counsel for James and Emily to concede that Joseph and Alvin are entitled to this proportion, rather than to one third of one half. The two thirds remaining, four ninths of the whole, as given to James and Emily, pass, because of the subsequent revocation of the bequest to them, under Paragraph 6 of the will as changed, as also does the principal of the two ninths, upon the death of Joseph and Alvin. So that there is presently to be disposed of, under.the sixth paragraph of the will as changed, $3,333.33 out of the first $50,000, $8,333.33 out of the second $50,000, and four ninths of the excess above $100,000; and ultimately, upon the death of the respective beneficiaries for life, the $30,000 given to James and Emily for life, the $5,000 so given to Flora, and the $20,000 and the two ninths of the excess above $100,000 so given to Joseph and Alvin.

The sixth paragraph of the original will gave the residue of the estate to Margaret Benson absolutely. By Paragraph 7 of the first codicil, her name was stricken therefrom, and the 3. WILLS: con-  names of James, Emily, Alvin, and Joseph were struction: sur- vivorship among  inserted "in lieu thereof." By the third codicil, residuary lega- tees.  all bequests, devises, and provisions in the will and first codicil in favor of James and Emily were expressly revoked. In this situation, it is urged on behalf of Alvin and Joseph that they are entitled to the whole of the residuary estate, upon the theory that the revocation of all bequests to James and Emily simply operated to strike their names from the sixth paragraph of the will, leaving Alvin and Joseph as the ones named to take the whole of the residuary estate. This is .the claim made by plaintiff, appellant, but we do not find anywhere in the argument on the cross-appeal by said Alvin and Joseph that they make any such claim. The only matters re-

ferred to in their argument are that plaintiff has no right to appeal; that the decree of the court in holding that Flora is entitled to the income of $5,000 is correct; and that the widow is not entitled to participate further in the residuary or intestate property. We think the contention of appellant at this point cannot be sustained. The doctrine of survivorship among the residuary legatees—the rule which, by analogy, is sought to be invoked—applies only where the bequest is to a class, which is not the case here.

It is further urged that, since such a construction would avoid partial intestacy, it should for that reason be adopted; but the merits of this question cannot be affected by the action of the widow in rejecting the provisions of the will. That is to say, the sixth paragraph, after the revocation of all bequests to James and Emily, meant, under the law, one thing or the other,—gave all the residue to Alvin and Joseph, or gave them one half,—whether the widow took under the will or under the law. Its meaning and effect are fixed by its terms and by the law. If the widow took under the will, the residuary bequest to her in the last codicil left no intestate property. The circumstance that her rejection of the provisions for her in the will left property undisposed of cannot affect the construction to be placed upon a provision that meant one thing or the other, regardless of her action. We are of opinion that the trial court rightly held that Alvin and Joseph take each one fourth of the residuary estate under the sixth paragraph of the will, and that the remaining one half thereof, being undisposed of by the will or codicils, descends as intestate property to James and Emily, as heirs at law. It may be admitted that James and Emily under the will, take only the income for life on the fund; but it does not follow that, because that is all they take under the will, it is all that they take in the estate. As to the intestate property, of course, it descends as though there was no will.

*4. DESCENT AND DISTRIBUTION: persons entitled: legatees under will.*

It may be conceded, as contended by appellant, that the last codicil, when analyzed, is a legal curiosity. Appellant concedes, however, that the widow, having elected to reject the terms of the will, cannot take the residue of the property, under the

terms of this codicil. They contend, however, that, even if this is so, she is not deprived of an interest in the intestate property, or property which shall become intestate. We have already indicated that we cannot agree with appellant's contention that the last codicil had the effect to take away from Joseph and Alvin their interest in the residuary estate.

2. Under some circumstances, there is a legal fiction by which the distributive share of a widow may be increased. Such a situation does not arise in this case. Section 3379 is inapplicable, because it serves to enlarge the distributive share only where there is a concurrence of two things: First, where the husband dies intestate; and second, where he leaves no issue. Here there was a will; hence the testator did not die intestate. He also left issue, his two grandchildren, James and Emily. We are cited to cases from other jurisdictions, and under different statutes. The widow having elected to take under the law, so far as she is personally concerned there is no question as to testate or intestate property. When the election is made, she takes her distributive share in the estate of her deceased husband, and is entitled to one third in value of the real property and one third in value of the personal property, after payment of debts and expenses of administration. Code, 1897, Sections 3362, 3366. It seems quite clear that she cannot take her dower out of the estate, including intestate property, and at some later time take dower again out of the same intestate property.

5. WILLS: rejection by widow; effect.

3. It is contended by appellees, or cross-appellants Alvin, Joseph, James, and Emily Leighton, that the plaintiff has no right to appeal from the decree construing the will, because, as executrix, she stands indifferent as between and among the various parties claiming under the will; and that, having renounced all provisions of the will in her behalf, and having recorded her election, she has no interest in the decree, for the reason that her interest and estate are in no manner affected thereby. Cases from other jurisdictions are cited. Without reviewing the cases cited, we think they are distinguishable, on both the statutes and the decisions, from the decisions and statutes of Iowa.

6. APPEAL AND ERROR: who may appeal: executrix without personal interest.

The widow personally is not appealing. She appeals as executrix and trustee. In the view we have taken of the case, we feel that we would not be justified in discussing this matter at any length. The executrix and trustee represents all parties, and we think she has a right to maintain the appeal. Without reviewing the cases, the following may be cited, as sustaining our conclusion: *In re Estate of Bagger,* 78 Iowa 171, 174; *Ryan v. Hutchinson,* 161 Iowa 575, 584; *In re Paulson's Will,* 127 Wis. 612 (107 N. W. 484); *Ruch v. Biery,* 110 Ind. 444 (11 N. E. 312, 314).

We are of opinion that the trial court correctly construed this will, or as nearly so as it is possible to do, under the circumstances. The appeal by plaintiff is affirmed. All cross-appeals are affirmed.—*Affirmed.*

STEVENS, C. J., WEAVER and DE GRAFF, JJ., concur.