IN RE ESTATE OF BERNARD C. BARNES, deceased.

No. 51294.

(Reported in 128 N.W.2d 188 and 130 N.W.2d 227)

1046

May 5, 1964.

Rehearing Denied July 16, 1964.

Opinion Modified September 21, 1964.

Albert J. Todd and Herrick, Langdon, Sandblom & Belin, of Des Moines, for Iowa-Des Moines National Bank, executor-appellant.

Hansen, Wheatcraft, Galvin & McClintock, of Des Moines, for Kathryn V. Barnes and Walter B. Barnes, appellees.

LARSON, J.—Testator's widow, Kathryn V. Barnes, and his adult son, Walter B. Barnes, applied to the court for construction of his will and codicil now in the course of probate in the District Court of Polk County, Iowa. They also asked, pursuant to rule 264, R. C. P., that the court declare on three specific matters relating to the distribution of certain unused portions or residue of trust assets in the estate. Testator died October 31, 1962, leaving a gross estate of almost one million dollars. His wife had lived apart from him for 25 to 30 years, and Walter was the sole issue of this marriage. This appeal by the executor was authorized as an estate expense, and from that order the appellees cross-appeal.

The trial court held that Paragraph VII of the will was void as against public policy and declared the undisposed corpus of two trusts established for the benefit of testator's secretary and his sister constituted reversionary interests which vested immediately upon testator's death, and each unused portion, when determined, should be paid to the son or his heirs.

Testator's will, after making certain specific bequests, provided in Paragraph VI that all the rest, residue and remainder of his property was devised to the Iowa-Des Moines National Bank *in trust* to hold, manage and distribute as follows: One half of the assets "to be held for the use and benefit of my son Walter B. Barnes to be paid him under the terms and provisions as hereinafter set forth"; one fourth of the assets "to be held for the use and benefit of my secretary Sara E. Smith to be paid her under the terms and provisions as hereinafter set forth";

1048

and one fourth of the assets "to be held for the use and benefit of my sister Margaret Barnes * * * to be paid her under the terms and provisions as hereinafter set forth."

Paragraph VI then goes on to direct the trustee to pay the son $300 per month until he attains his 30th birthday, at which time he is to receive one third of the funds allotted to him. He was to receive another one third on his 35th birthday, and the last third on his 40th birthday. Any further monthly allowance, after receiving his first third, necessary for his maintenance and support, is left to the discretion of the trustee. By codicil executed a week before his death, testator raised the ages when the son was to receive the corpus from 30 to 35, from 35 to 40, and from 40 to 45.

It directed the trustee to pay Sara E. Smith, the secretary, $250 per month during the term of her natural life from her allotted funds, but also provided that in the event of her marriage or death "any trust assets remaining shall revert to and be paid into the general trust hereinbefore created." By the codicil the monthly payments were increased to $300.

It directed the trustee to pay the sister, Margaret Barnes, the sum of $250 per month during her natural life, and provided "the trust hereinbefore established shall terminate upon her death or upon the exhaustion of the trust estate, whichever shall be first", and any trust assets remaining were to "revert to and be paid into the general trust hereinbefore created." These monthly payments were also increased to $300 by the codicil.

Paragraph VII, which gave rise to the main dispute herein, contained this condition and direction: "In the event Kathryn V. Barnes shall elect to demand her dower or distributive share under the law rather than to accept the provisions of this my Will on her behalf, then and in that event the Trust hereinbefore established for Walter B. Barnes shall stand revoked and become a nullity and of no legal force and effect, and the trust assets otherwise provided for said Walter B. Barnes *shall revert to and become a part of the general trust heretofore created and shall be payable to Sara E. Smith and Margaret Barnes only* as heretofore provided." (Emphasis supplied.)

Pursuant to rule 264, R. C. P., three questions were asked

the court: "A. In the event Kathryn V. Barnes elects to take dower rather than taking under the terms of the Will, how shall the residue of the estate be held and distributed? B. Upon the marriage or death of Sara E. Smith, what distribution is to be made by the trustee of the unused portion of the trust assets held for her use and benefit? C. Upon the death of Margaret Barnes, what distribution is to be made by the trustee of the unused portion of the trust assets held for her use and benefit?"

Speaking generally, it cannot be said as a matter of law that a subsequent contingent revocation or alteration of a conditional bequest in a will is illegal or void, nor that it is necessarily invalid for repugnancy. Intent and purpose play a vital part in such determinations. In re Estate of McCulloch, 243 Iowa 449, 52 N.W.2d 67; In re Estate of Yarolem, 247 Iowa 849, 76 N.W.2d 770.

Nevertheless, these are the propositions we are asked to consider herein.

I. Here, as in most will cases, the primary and controlling quest is the intention of the testator. When determined, that intention must be made effective if it is a lawful one and not against public policy. In re Estate of Artz, 254 Iowa 1064, 1069, 120 N.W.2d 418, and citations; Guilford v. Gardner, 180 Iowa 1210, 1224, 162 N.W. 261. Where the intention is clearly and unequivocally expressed, there is no need for judicial construction or extrinsic evidence, but where the language is doubtful or uncertain, extrinsic evidence may be received, not to vary the effect of the language used, but to disclose the circumstances under which the will was made and thus throw light upon the testator's intent. Wright v. Copeland, 241 Iowa 447, 452, 41 N.W.2d 102. Albert J. Todd, a practicing lawyer who prepared this will, Dee L. Frost, trust officer of the bank who visited with testator relative to the codicil to his will shortly before testator died, and Sara E. Smith, the testator's secretary, testified as to those circumstances.

It is axiomatic that a will and its codicil are to be read and construed together as one instrument executed on the date of the last codicil, and so we will consider them here as the will. Such an instrument must be taken by its four corners, and

each paragraph must be read in the light of the other provisions in order to gain an understanding of what testator meant by the designations and references used. In re Estate of McCulloch, supra; In re Estate of Ritter, 239 Iowa 788, 798, 32 N.W.2d 666, 671, 2 A. L. R.2d 1301; 57 Am. Jur., Wills, sections 1133-1137; 95 C. J. S., Wills, section 591; In re Estate of Artz, supra.

What, then, was the intention of Dr. Bernard C. Barnes as disclosed by the language of this entire will, and by the circumstances surrounding its preparation and execution? Mr. Todd, a practicing lawyer in Des Moines for over 40 years, told of the family situation, of the estrangement of testator and his wife for some 25 to 30 years, of the maintenance of separate residences, and of the wife rearing their sole child Walter, of testator's lack of faith in their ability to handle large amounts of money or property, and of testator's desire to postpone the enjoyment of his accumulated property until the son acquired mature judgment. He feared that would not occur for some time. Mr. Frost testified to testator's lack of confidence in his son's ability to handle property and said he was present when testator directed that the ages be raised when the son was to take the corpus of the trust funds allotted to him in Paragraph VI of the will and that the bequest of his automobile to the son be removed by the codicil.

Sara E. Smith, a long-time employee of the testator to whom he gave a life estate in his residence and furniture in Des Moines, testified that he did not desire to turn over his property in a lump sum. She said he preferred to fix it so it would be "dribbled out, so to speak, so that it will not be frittered away."

Appellant-executor takes the position that testator's obvious intent, as disclosed by the whole will and the surrounding circumstances, was to delay the time when his son would obtain access to this property, and meanwhile to make sure he had sufficient funds for his proper maintenance and support; that he intended only that the time of enjoyment be postponed until the son acquired more mature judgment; and that if his widow elected to take dower, only the reversionary rights in the *general trust* assets were to pass to the son or his heirs. Appellant main-

tains this was indicative of the sound judgment of testator who had accumulated this substantial estate, for it could be reasonably and properly assumed that Walter's mother, with such a large estate (about $300,000) from dower would not see their child want for proper maintenance and support until his reversionary rights matured. Obviously, if these were testator's intentions, his objects and purposes (and there is much to sustain that view) a finding that the purpose contravened sound public policy would not seem justified.

Appellees, on the other hand, contend from a reading of Paragraph VII one may properly conclude testator was attempting to intimidate and coerce the widow into taking under the will, which gave her only the jointly-owned residence in which she had lived the past 25 or more years. They argue that if that were the sole and only purpose of this provision, the paragraph might well be declared void as against the public policy. The trial court took that view.

Since there seems to be no dispute as to the general rules as aids in the determination of a testator's intent, we shall apply them here. The only difference seems to lie in the proper implications that may be found in the express terms of testator's will. Do testator's provisions in Paragraph VII of the will expressly or by necessary implication contravene the public policy of this state? We think not.

██ II. The term "public policy" itself is indefinite and is not susceptible of exact definition. It recognizes a principle of law which holds that no subject can lawfully do that which has a tendency to be injurious to the public, or against the public good, which may be termed the policy of the law. Disbrow v. Board of Supervisors of Cass County, 119 Iowa 538, 541, 93 N.W. 585. "The test is the evil tendency of the contract, and not its actual injury to the public in a particular instance." Jones v. American Home Finding Assn., 191 Iowa 211, 213, 182 N.W. 191. It means simply that policy recognized by the state in determining what acts are unlawful or undesirable, as being injurious to the public or contrary to the public good. Haynes v. Presbyterian Hospital Assn., 241 Iowa 1269, 1272, 45 N.W.2d 151. In this connection, while public policy has its

basis in the promotion of public good, the power of the courts to declare a contract or provision of a will in contravention of sound public policy is quite limited. It is akin to the power of the court to declare a statute unconstitutional and should be exercised only in cases free from doubt. Contingent bequests are not frowned upon by the law as a class (In re Estate of McCulloch, supra.), and we doubt the one exercised by testator here was so undesirable as to be called contrary to the public good.

■ Obviously, a choice by the widow to take dower would result in the son's loss of any present enjoyment of testator's property and, while it may be said under some circumstances such a condition would tend to curtail a free choice of a devoted mother, yet it cannot be said for certain that was the underlying purpose behind the provisions of Paragraph VII of this will.

It seems quite clear from a reading of the entire will, and from the acts and statements of the testator at the time the will and codicil were executed, that testator's primary concern was the son's ability to handle large amounts of property, and that the dominant desire expressed was that the date of his enjoyment of this estate be postponed until he was considerably older and more mature in judgment—not to punish or deprive his widow of her dower rights.

Should the widow's share of one third of the estate be dissipated and not properly preserved, the provisions for the future enjoyment of the son's share might be found wise indeed. True, one cannot foresee all future conditions, but this was testator's property. He was a wise businessman, and any judgment as to what would be the best distribution of his estate, including the provisions for the widow and son, was his to decide, except for the statutory restrictions found in section 633.1, Code, 1962, which he recognized. Section 633.1 provides: "Any person of full age and sound mind may dispose by will of all his property, subject to the rights of homestead and exemption created by law, and the distributive share in his estate given by law to the surviving spouse, except sufficient to pay his debts and expenses of administration."

This statute was not violated, and so the wisdom exercised by the testator in doing what he thought best for his son and widow, is not the concern of the court. Indeed, in the case of Leighton v. Leighton, 193 Iowa 1299, 1305, 188 N.W. 922, which was an action in equity to construe a will, a very similar provision was approved. It provided: " 'Should my widow preferring to make provision for her relatives named in my will or for any reason elect to take under the statutes of Iowa, then the provisions of my said will in favor of Margaret Clara Benson and four other Bensons, the two Seips, and each of them shall become null and void, stricken out and wholly revoked'." Also see In re Estate of Maske, 243 Iowa 1394, 55 N.W.2d 474, 36 A. L. R.2d 285. In each of these matters it appears no penalty for the widow's election to take dower was intended, but the intent was to provide an alternative way of bestowing desired benefits upon others. So it is here, and we think it reasonable to conclude testator intended that if his widow elected to take her dower interest, ample funds for her and their son for years to come would be available, that if well managed, the remainder would not be needed until mature judgment was developed by his son, and that he had little confidence in the son's present ability to handle such a large estate and wished to postpone the enjoyment thereof.

We conclude there was no clear or obvious violation of public policy in the provisions of Paragraph VII of the will and, unless invalid for some other reason, they must be considered legal and binding.

III. We are next asked to review the declaration of the trial court as to the time and manner of distribution of trust funds herein. Again the intent of the testator becomes of prime importance. His right to dispose of his property and place it in trust for any legal purpose has legal sanction. It is frequently done by will. In re Estate of French, 242 Iowa 113, 44 N.W.2d 706. In Scott on Trusts, Volume 3, section 337.3, page 1844, the author points out American cases lay stress on the notion that a testator may make such provisions as he likes with regard to his property as long as he makes no provision which runs counter to any rule of law or principle of public policy, and that it is

the duty of the court to carry out his directions. The question posed is, then, how far should a testator be permitted to control not only the disposition but the enjoyment of his property? If we assume here that Walter, the son, was the sole beneficiary of one half of the trust assets, should he not immediately be allowed to deal with them as he pleases? This is the English view, but we have been slow to upset the directions of the settlor and have held to the view that "it is difficult to say that the postponement of enjoyment of the principal of the trust fund by the sole beneficiary of the trust is against public policy." The leading case in America, of course, is Claflin v. Claflin, 149 Mass. 19, 23, 20 N.E. 454, 3 L. R. A. 370, 14 Am. St. Rep. 393. Our search, then, in this division is to find the specific directions of the settlor as to those funds allotted for Walter's benefit.

We have recently said (In re Trusts of Young, 243 Iowa 211, 218, 49 N.W.2d 769) the intent of the testator is sought in the language used, read in the light of surrounding facts and conditions, in setting up a testamentary trust. It must be construed in favor of the general or primary intent manifest from the instrument taken as a whole.

■ Here there can be no doubt that Doctor Barnes intended that if his widow elected to take her distributive share, his son Walter was to have no enjoyment of the trust assets during the period of the trust or trusts. He did not take away his son's right to inherit, as he could have done (Leighton v. Leighton, supra, 193 Iowa 1299, 188 N.W. 922), but he did provide that his enjoyment be postponed until the obligations of the general trust were fulfilled or until the last was to occur, the death or marriage of Sara E. Smith or the death of Margaret Barnes.

Whether we view Paragraph VI as setting up one trust or four, from the language used it seems evident that the *general trust* created was to provide the funds needed to confer benefits on Walter Barnes, Sara E. Smith, and Margaret Barnes, and Paragraph VII of the will specifically provided that upon revocation of the benefits to Walter the assets so allotted "shall revert to and become a part of the general trust", and then be

available only to pay the benefits provided for Sara E. Smith and Margaret Barnes.

Paragraph VI specifically directed any remainder of the assets allotted to Margaret Barnes, upon her death, "shall revert to and be paid into the general trust", and that any remainder of the assets allotted to Sara E. Smith, upon her death or marriage, "shall revert to and be paid into the general trust." Thus it cannot be said these allotted funds were left without direction at the termination of their trusts or purpose, nor that until all the purposes of the allotments were completed the general trust could be dissolved, without violating testator's directions.

IV. Appellees' further contention that Paragraph VII is invalid because its provisions are repugnant to those in Paragraph VI cannot be sustained. As previously pointed out, the trust benefits bequeathed by the will were conditional. The doctrine of repugnancy in Iowa as set forth in the early case of Law v. Douglass, 107 Iowa 606, 608, 78 N.W. 212, stated: "The intention of the testator is the polar star in the interpretation of a will. It will be sought from an examination of the entire instrument when taken up by its four corners. * * * courts have deemed it of more importance to ascertain and give effect to the wishes of the deceased * * *. There are some things, however, which even a testator may not do, and which the courts are powerless to aid him in doing, however clearly his intentions may be expressed. He cannot create a fee with absolute power of disposal, and at the same time clog that power of alienation by limitations over to another; in other words, he cannot include provisions which are absolutely inconsistent in terms and meaning, and have all given force and effect. * * *." Guilford v. Gardner, supra, 180 Iowa 1210, 162 N.W. 261, and citations. We have applied this rule recently in In re Estate of Lewis, 248 Iowa 227, 80 N.W.2d 347, and Schmidt v. Claus, 250 Iowa 314, 93 N.W.2d 592. In those cases we held that an unambiguous absolute grant in one paragraph of a will cannot be limited by a separate subsequent repugnant provision. Without again considering the merits of that rule, we are satisfied it does not apply here.

Filkins v. Severn, 127 Iowa 738, 104 N.W. 346, cited by ap-

pellees, was a devise in trust, and it was held such a devise which neither designates nor provides for the selection of a beneficiary is void, and upon the death of the testator the heirs are entitled to an immediate distribution of the trust property. However, the court pointed out therein that if the purpose of the trust had been specified, perhaps the bequest would have been sustained, citing Grant v. Saunders, 121 Iowa 80, 95 N.W. 411, 100 Am. St. Rep. 310.

Here there was no lack of purpose specified and no revocation or alteration of the general trust. It must be noted that the devise or primary grant was not to Walter, Sara or Margaret, but to the trustee, the Iowa-Des Moines National Bank. Testator clearly intended no absolute devise or bequest of the corpus to any one beneficiary. As to the importance of his intent, see Guilford v. Gardner, supra; In re Estate of McCulloch, supra, 243 Iowa 449, 52 N.W.2d 67; In re Estate of Yarolem, supra, 247 Iowa 849, 76 N.W.2d 770.

In each case the beneficial grant contained the proviso that the benefits were to be paid "under the terms and provisions as hereinafter set forth." This is more than an implication that the grant was not absolute in fee. As pointed out in Todd v. Stewart, 199 Iowa 821, 202 N.W. 844, cited by appellees, it must be noted that the application of the doctrine in concert with the intent of the testator has not been without difficulty, for it must be said that a testator may devise and bequeath with certain limitations and conditions. The case at bar was just such a case. We conclude it was not the testator's purpose to convey an absolute fee in these beneficiaries as such. Each was to take subject to the conditions imposed, which clearly required that remaining assets be reverted to the purposes of the general fund if and when certain events occurred.

V. In this view it is the undisposed corpus at the termination of the general trust that constitutes an estate in reversion. We said in Ransom v. Mellor, 230 Iowa 451, 454, 455, 297 N.W. 861: "An estate in reversion or reversionary interest is the residue of an estate left by operation of law in the grantor or devisor or his successors, commencing in possession on the determination of a particular estate granted or devised.

It remains vested in the sense of a present fixed right of enjoyment in the future." Thompson on Real Property, Perm. Ed., section 2180; 1 Cooley's Blackstone, Fourth Ed., 578. Thus upon the death of the testator such estate or interest, left undisposed by the will, passes at once to his heirs-at-law, the same as any other intestate property. Leighton v. Leighton, supra, 193 Iowa 1299, 188 N.W. 922; Horak v. Stanley, 216 Iowa 318, 249 N.W. 166. The rule was applied in the Ransom case which held that where a will provides for the holding of the entire residuary estate in trust and the payment of the income to certain named beneficiaries during their respective lives, but makes no disposition or further mention of the corpus of the trust which will remain, the undisposed corpus of the trust constitutes an estate in reversion or a reversionary interest which passes to the testator's heirs.

This undisposed remainder is also often referred to as a resulting trust in favor of settlor or his estate. In Scott on Trusts, Volume 3, section 430, page 2219, it is stated: "Where the trust is fully performed without exhausting the trust estate, a resulting trust arises, * * * in favor of the settlor or his estate."

So in the matter at hand we conclude the undisposed corpus of the general trust, after the performance of the obligations to Sara and Margaret, constitutes an estate in reversion. This reversionary interest, of course, is a present vested interest arising by construction and operation of law, being the undisposed portion of testator's estate when the trust is terminated. Since the will fails to direct disposition of the remainder, the undisposed or unused portion of the trust vests in Walter at the death of the testator, with enjoyment in him postponed until Sara's death or marriage, and Margaret's death. 31 C. J. S., Estates, section 106, page 205; Ransom v. Mellor, 230 Iowa 451, 455, 297 N.W. 861, 863, and Lewis v. Lewis, 114 Iowa 399, 87 N.W. 280. Since we are satisfied that testator's will makes disposition of the remainder in each of the smaller trusts or allotments, it is the remainder of the general trust which gives rise to the resulting trust in favor of testator's estate. We are sat-

isfied this is what testator desired and legally provided, so until the purpose of the general trust has been accomplished and no further funds will be required for directed benefits to Sara and Margaret, Walter's enjoyment of the corpus is postponed.

 VI. In appellees' cross-appeal the issue before us is whether the trial court erred in granting the executor authority to appeal and to pay expenses of the appeal from estate assets. While it is true we have said the executor may not assist persons to promote their personal interests and charge the estate for the expense (In re Estate of Law, 253 Iowa 599, 602, 113 N.W.2d 233), we also pointed out therein that no positive or dogmatic pronouncement upon the question as to when a nominated executor may legally obligate the estate for expenses or attorney fees in an effort to probate or sustain a will is wise or possible. The extent of his duty depends upon the peculiar circumstances of each individual case. Generally, the trial court's sound discretion will be upheld.

 A reasonable effort to sustain the provisions of the will is the duty imposed by law upon the executor. The trial court found grounds for a belief here that the correctness of its declaration and determination was still in doubt, and under that decision, if wrong, irreparable damage could be done to the estate and to the desires and directions of the testator. While the executor might be held faultless in not appealing, it now appears its concern was justified and, with so much at stake, we cannot say the court erred in authorizing the continued employment of special counsel and ordering the expense of the appeal paid from estate assets.

The new Iowa Probate Code, which became effective January 1, 1964, provides in section 314 of chapter 326, Laws of Sixtieth General Assembly: "When any person is designated as executor in a will, or has been appointed as executor, and defends or prosecutes any proceedings in good faith and with just cause, whether successful or not, he shall be allowed out of the estate his necessary expenses and disbursements, including reasonable attorney fees in such proceedings."

We do not understand the good faith of this executor is

questioned.—Reversed on appellant's appeal and affirmed on appellees' cross-appeal.

All JUSTICES concur.