SCOTT LIGGETT, Appellee, v. ALONZO SHRIVER, Township Clerk, Appellant.

HIGHWAYS: Township Road System—Superintendent of Roads—
1 Legality of Contract. A township superintendent of roads, under Sec. 1527-s13, Supplemental Supplement, 1915, may be something more than a mere "*overseer.*" He may validly contract with the township trustees to *personally* perform the ordinary road work of the township as provided in said section, such work not constituting an "improvement," within the meaning of Section 1527-s15, Code Supp., 1913, prohibiting such superintendent from being interested in contracts for the "improvement" of roads.

STATUTES: Construction—Prohibitory Statutes—Expression of one
2 Thing Excludes Another. Principle recognized that, in the construction of a statute containing prohibitory provisions, the expression of one thing is the exclusion of the other.

CONTRACTS: Legality of Object, Etc.—Public Policy—Highway
3 Superintendent—Inconsistent Rights and Duties. A contract by which one is employed by the township trustees (a) to act as superintendent of roads, and (b) to furnish his own personal labor and teams in the actual doing of the road work, is not, in view of our general highway statute (Ch. 1-A, Tit. VIII, Code Supp., 1913), contrary to public policy.

*Appeal from Wayne District Court.*—THOMAS L. MAXWELL, Judge.

THURSDAY, OCTOBER 18, 1917.

ON March 15, 1915, Scott Liggett, appellee herein, was, by written contract, employed by the township trustees of Jackson Township, Wayne County, Iowa, as highway superintendent. A blank form of contract furnished the trustees by the state highway commission was used. On November 29th following, appellee filed itemized statements of the services rendered, charging therefor on the basis of a schedule set out in the written contract. At the time the claims were filed, they were not certified by him, as required by statute, but later, his certificate was attached thereto. The itemized statements were approved, and the amounts claimed allowed by the township trustees, and orders drawn therefor, one in the sum of $774.50, one for $22.50, and one for $1.50. The township clerk, however, refused to pay the larger one, but in open court in this case tendered payment of the two smaller orders. Later, this action was brought against the township clerk, plaintiff alleging in his petition the services rendered and the refusal of payment thereof by the clerk, and praying the issuance of a writ of mandamus to compel appellant to pay the orders issued by the township trustees. The order for $774.50 included an item of $210.25 for services claimed to have been rendered by plaintiff while superintending work on the highways. The remainder of his claim is for service of his teams and men employed and paid by him in repair work on the highways of said township. The court granted the prayer of plaintiff's petition, and ordered the writ to issue. Defendant appeals.—*Affirmed.*

*Miles & Steele,* for appellant.

*Carter & Bracewell,* for appellee.

STEVENS, J.— Appellant relies for reversal upon two propositions: (1) That the contract entered into between the township trustees and plaintiff is prohibited by Section 1527-s15, Supplement to the Code, 1913;

1. HIGHWAYS: township road system: superintendent of roads: legality of contract.

and (2) that the same is contrary to public policy and void.

The two propositions are so closely related that they will be considered together. Without setting out the contract in detail, it provided substantially as follows: That appellee should make contracts for dragging the roads, supervise the work on draggable roads, keep approaches to culverts and bridges and the openings to all culverts and drainage ditches in good repair, the roadside free from weeds, brush and other material, use such tools and methods as are necessary to keep the roadway rounding in shape, do all permanent grading work, in accordance with the plans and instructions of the county engineer, work out and supervise poll taxes, report unsafe culverts and bridges, notify owners to cut and destroy all noxious weeds, employ such assistants as were necessary, at a compensation to be approved by the board of trustees, certify itemized bills for dragging, maintenance or repair work, make report of all work done by himself and assistants, and perform other designated services.

Section 1527-s13, Supplemental Supplement, 1915, provides:

"* * * Said superintendent or superintendents shall have general supervision of all dragging and repair work on the township road system, including the placing of temporary culverts, and the term of office and compensation of such superintendent or superintendents shall be at the discretion of the township trustees. The superintendent shall see that the approaches to all bridges on said roads are maintained in such manner as to present smooth and uniform surfaces, and keep the openings to all culverts and ditches free from weeds, brush and other material that will in any manner prevent the free discharge of surface water. He shall have charge of all draggable roads of the township road system and make contracts for dragging, and shall see that all draggable roads of the township road system

are properly dragged at such times as are necessary to
maintain such roads in smooth condition, at such price as
is reasonable and necessary to secure such contracts, to be
fixed by the township trustees. For this purpose there
shall be expended under the direction of the township
trustees, through the road superintendent, upon the town-
ship road system not less than the one mill drag tax now
authorized by law. The township trustees shall not allow
any bills for dragging, maintenance, or repairs work, nor
shall warrants in payment therefor be drawn by the town-
ship clerk upon funds of the township road system until
itemized bills therefor have been certified to by the town-
ship road superintendent. A violation of this section shall
render the township clerk liable on his bond for the amount
of said warrant. The compensation of such superintendent
for all duties except any dragging actually performed by
him, and the cost of all equipment for dragging, shall be paid
for out of the township road funds. He shall at least once
a year, or on demand, furnish the township trustees a re-
port of all work done under and by him."

Section 1527-s15, Supplement to the Code, 1913, pro-
vides:

"* * * No member of the highway commission,
* * * road superintendent or any person in their em-
ploy * * * shall be, either directly or indirectly, inter-
ested in any contract for the construction or building of
any bridge or bridges, culvert or culverts or any improve-
ment of any road or parts of road coming under the pro-
visions of this act."

If the contract in question comes within the purview
of this statute, it is void, and plaintiff could not recover
for services rendered thereunder.

Without restatement of the above enumerated matters,
it will be noticed that, by specific reference, the inhibition

of the statute applies only to contracts for the construction or building of bridges or, culverts, or the improvement of roads or parts of roads coming under the provision of the statute. "Improvement work," as that term is used, must be done in accordance with plans and specifications furnished by a county engineer, and an application must be made by the township trustees to the board of supervisors before such work can be done, but, upon application's being made, the board shall furnish an engineer, to be paid out of the county fund, whose duty it shall be to survey and lay off such roads according to the plans and specifications provided for the county road system, and the work shall be done in accordance therewith. Sections 1527-s9 and 1527-s14, Supplemental Supplement, 1915.

2. STATUTES: construction: prohibitory statutes: expression of one thing excludes another.

Section 1527-s13, quoted above, is permissive in character, and prescribes the duties of a person employed as highway superintendent; while Section 1527-s15 is restrictive, and enumerates the things he must not do after becoming highway superintendent. The two sections are not in conflict, and it will be presumed that the legislature included in the latter section all that it deemed important or necessary to prohibit, and, by implication at least, left the township trustees free to contract in relation to all matters not included within the prohibitory provisions of the statute.

None of the services for which appellee claims compensation comes within the prohibited list. It is true that the services include work and the labor done by his teams and men employed by him, and also the superintending of work upon the highway; but it does not appear that duplicate charges for work and labor and services while superintending are included in the itemized statements filed with the township trustees. The superintendent, of course, could not charge for services as a laborer and at the same time

for services as superintendent. None of the services rendered was under a contract directly or indirectly relating to "the construction or building of any bridge or bridges, culvert or culverts, or any improvement of any road or parts of road coming under the provisions of this act," but all services rendered were of the class permitted by the statute and enumerated in his contract with the township trustees. Unless, therefore, the contract in question is, as claimed by counsel for appellant, contrary to public policy, the finding and judgment of the lower court must be affirmed.

3. CONTRACTS: legality of object, etc.: public policy: highway superintendent: inconsistent rights and duties.

It is claimed by counsel that the contract under consideration is ruled by the decisions of this court in *Bay v. Davidson*, 133 Iowa 688, and *James v. City of Hamburg*, 174 Iowa 301, and other cases of like tenor, and that same is clearly contrary to public policy. The term "public policy" is of indefinite and uncertain definition, and there is no absolute rule or test by which it can always be determined whether a contract contravenes the public policy of the state, but each case must be determined according to the terms of the instrument under consideration and the circumstances peculiar thereto. In general, however, it may be said that any contract which conflicts with the morals of the times or contravenes any established interest of society is contrary to public policy. We must look to the Constitution, statutes and judicial decisions of the state to determine its public policy, and that which is not prohibited by statute, condemned by judicial decision, nor contrary to the public morals, contravenes no principle of public policy. *Spead v. Tomlinson*, (N. H.) 59 Atl. 376; *Lipscomb v. Adams*, (Mo.) 91 S. W. 1046; *McGuffin v. Coyle & Guss*, (Okla.) 85 Pac. 954; *Lawson v. Cobban*, (Mont.) 99 Pac. 128; *Atlantic Coast Line R. Co. v. Beazley*,

(Fla.) 45 So. 761; *Brooks v. Cooper,* (N. J.) 26 Atl. 978; *Veazey v. Allen,* (N. Y.) 66 N. E. 103; *McClanahan v. Breeding,* (Ind.) 88 N. E. 695.

In the cases cited by counsel for appellant, the doctrine contended for was applied to transactions in which a public officer was involved, and they were cases in which, even though no actual fraud was charged, the officer might, in the performance of his public duty, be placed in a situation where he would be required to choose between his private interests and that of his constituency. It is the public policy of the government, state and national, to require all public officials, in the performance of the duties of their office, to subordinate every private interest to the public welfare, and to avoid transactions of every kind which may place private interests in antagonism to public duty. It is true that while, in the performance of his duties, a superintendent renders other services than as a laborer, they are confined to matters not prohibited by the statute, and in no way conflict with the interests of society or public welfare. He must keep a record of the time and services rendered upon the highway by men employed by him or working under his supervision, prepare an itemized statement thereof, certify that same is true and correct, and file the same with the township trustees, who alone are charged with the duty of passing upon the correctness thereof and allowing or rejecting the same. If the charges made by the superintendent are in accordance with the schedule set out in his contract, and he has correctly kept the time of the men and teams working, his claims should be allowed; otherwise, altered or modified to conform to the facts. Of course, some reliance must be placed by the township trustees upon the integrity of the highway superintendent, but it may be presumed that the trustees will, in the exercise of their discretion as public officers, look well to the character of men selected for this position, and that they will also exercise

the discretion which the statute gives them of promptly terminating the contract with a superintendent found unworthy. There is no greater risk involved in the transaction in question than is present in every transaction founded upon contracts of employment. The authority conferred upon the township trustees safeguards the taxpayers and secures them against any danger of imposition or fraud on the part of the highway superintendent.

We reach the conclusion that the contract under consideration is not one prohibited by law, and that it is not contrary to public policy. The judgment of the lower court is, therefore,—*Affirmed.*

GAYNOR, C. J., WEAVER and PRESTON, JJ., concur.