James L. WALKER, now Farm & City Insurance Company, Appellant,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Appellee.

No. 83–27.

Supreme Court of Iowa.

Nov. 23, 1983.

John S. Pieters, of Pieters & Pieters, Waterloo, for appellant.

Michael F. Lacey, Jr., of Patterson, Lorentzen, Duffield, Timmons, Irish, Becker & Ordway, Des Moines, for appellee.

Considered by McGIVERIN, P.J., and LARSON, SCHULTZ, CARTER and WOLLE, JJ.

WOLLE, Justice.

A single issue is raised in this appeal. Is Iowa public policy violated when an automobile liability insurer excludes from coverage bodily injury to the insured owner? The trial court decided this declaratory judgment action adversely to plaintiff, finding that the exclusionary clause relied upon by the defendant insurer does not violate public policy. We agree and affirm.

The two levels of stipulated facts in this case concern the single-fatality traffic accident which generated one lawsuit, now settled, and the two automobile insurance policies which gave rise to this declaratory judgment action. Jordan Moorman, the victim of the automobile accident, owned an automobile covered by an automobile liability insurance policy issued by defendant American Family Mutual Insurance Company (American Family). On August 19, 1979, Moorman was a passenger in his automobile which was being driven with his consent by nominal plaintiff James Walker. Moorman was fatally injured in the traffic accident, and his personal representative brought a wrongful death action against Walker. Walker was defended both by American Family and by Walker's own automobile insurer, Farm & City Insurance Company (Farm & City), which covered Walker as the consent driver of a non-owned automobile.

Although participating in defense of the first lawsuit, American Family refused to pay any settlement or judgment for wrongful death, relying upon the following exclusion in its policy issued to Moorman:

EXCLUSIONS

This policy does not apply:

.   .   .   .   .   .

Under liability coverage,

c. To bodily injury to . . .

(2) *the insured* or any member of the family of the insured residing in the same household as the insured.

(Emphasis added). Farm & City, acting on behalf of its insured Walker, negotiated a settlement with Moorman's estate, thereby concluding the first lawsuit. Then Farm & City, the real party in interest here because it paid that negotiated settlement, brought this action against American Family, contending that the exclusionary clause in the policy issued to Moorman is invalid and that therefore American Family alone should pay the settlement proceeds received by the Moorman estate.

In urging us to invalidate the quoted exclusionary clause on public policy grounds, Farm & City develops themes from both Iowa statutory law and recent Iowa cases. First, it asserts that Iowa Code chapter 321A, Iowa's motor vehicle financial responsibility act, discloses a broad un-

derlying policy to require automobile insurers to protect the public from financially irresponsible motorists. Second, Farm & City contends that recent decisions of this court add another dimension to that public policy, judicial recognition that all members of society should be protected from the financial hardship of injuries sustained in automobile accidents. Finally, Farm & City invites us to follow a recent decision of the Washington Supreme Court which invalidated a family exclusionary clause as contrary to the public policy of that state.

## I. *Public Policy—Definition and Limitations.*

■ A contract which contravenes public policy will not be enforced by our courts. *See, e.g., Wunschel Law Firm, P.C. v. Clabaugh,* 291 N.W.2d 331, 335 (Iowa 1980); *Rowen v. LeMars Mutual Insurance Co. of Iowa,* 282 N.W.2d 639, 650 (Iowa 1979). While the term "public policy" is not susceptible of exact definition, the thrust of the legal principle that term represents is quite clear: a court ought not enforce a contract which tends to be injurious to the public or contrary to the public good. *In re Estate of Barnes,* 256 Iowa 1043, 1051–52, 128 N.W.2d 188, 192 (1964); *Disbrow v. Board of Supervisors of Cass County,* 119 Iowa 538, 541, 93 N.W. 585, 586 (1903). Thus, a contract may be invalidated if it would violate "any established interest of society." *Wunschel Law Firm, P.C. v. Clabaugh,* 291 N.W.2d at 335 (quoting *Liggett v. Shriver,* 181 Iowa 260, 265, 164 N.W. 611, 612 (1917)).

■ Whenever a court considers invalidating a contract on public policy grounds, it must also weigh in the balance the parties' freedom to contract. In *Tschrigi v. Merchants National Bank of Cedar Rapids,* 253 Iowa 682, 690, 113 N.W.2d 226, 231, (Iowa 1962), we quoted with approval the following statement of that competing policy:

> It is not the court's function to curtail the liberty to contract by enabling parties to escape their valid contractual obligation on the ground of public policy unless the

preservation of the general public welfare imperatively so demands. *Twin City Pipe Line Co. v. Harding Glass Co.,* 283 U.S. 353, 51 S.Ct. 476, 75 L.Ed. 1112, 83 A.L.R. 1168; 5 Williston, Contracts, Rev. Ed., § 1630A; 12 Am.Jur., Contracts, § 172.

Consequently, the power to invalidate a contract on public policy grounds must be used cautiously and exercised only in cases free from doubt. *Wunchel Law Firm, P.C. v. Clabaugh,* 291 N.W.2d at 335; *In re Estate of Barnes,* 256 Iowa at 1052, 128 N.W.2d at 192.

■ This same attempt to harmonize public policy and the freedom of individuals to contract is involved when provisions of insurance contracts are placed in issue. *See Skyline Harvestore Systems, Inc. v. Centennial Insurance Co.,* 331 N.W.2d 106, 109 (Iowa 1983); *Harrell v. Travelers Indemnity Co.,* 279 Or. 199, 207, 567 P.2d 1013, 1016 (1977).

## II. *Public Policy—Legislative.*

■ Farm & City first contends that Iowa Code chapter 321A, entitled "Motor Vehicle Financial Responsibility," evidences a broad underlying public policy to protect persons injured in motor vehicle accidents from financially irresponsible motorists. To support that contention it cites dictum to that effect from *Motor Vehicle Casualty Co. v. LeMars Mutual Insurance Co. of Iowa,* 254 Iowa 68, 76, 116 N.W.2d 434, 439 (1962). Our more recent decisions, however, have construed chapter 321A more narrowly, finding no legislative intent to require all motorists to have liability insurance and therefore no legislative expression of a public policy to protect all victims of traffic accidents. *Rodman v. State Farm Mutual Automobile Insurance Co.,* 208 N.W.2d 903, 908 (Iowa 1973); *Western Casualty and Surety Co. v. General Casualty Co. of Wisconsin,* 200 N.W.2d 892, 893 (Iowa 1972). As its title suggests, chapter 321A is a financial responsibility statute and therefore distinguishable from mandatory insurance statutes by which some states require all motorists to have a prescribed form of automobile insurance policy. *Western Cas-*

*ualty,* 200 N.W.2d at 893. Here, as in *Rodman* and *Western Casualty,* the automobile insurance policy in question was not issued to enable the insured owner to comply with chapter 321A. Since that statute allowed the owner Moorman to use his automobile without first obtaining liability insurance of any kind, it also left him free to purchase the limited coverage provided by the American Family policy.

We do not agree with Farm & City's contention that its broad public policy argument was not addressed in the *Western Casualty* case. What was said in *Western Casualty* applies equally here and answers that argument:

> The provisions of our financial responsibility act do not void the provisions of a voluntary insurance contract, in those situations beyond the contemplation of the act. We regret this holding to some extent may seem in conflict with a hope previously expressed by a legion of authorities including our own. See *Motor Vehicle Cas. Co. v. LeMars Mut. Ins. Co.,* 254 Iowa 68, 76, 116 N.W.2d 434, 439. The hope is the public would be protected from financial irresponsibility of motorists upon our streets and highways. In the pursuit of this end we cannot substitute a compulsory insurance law for a financial responsibility law. Neither can we arrogate to ourselves authority to remove or to alter an express limitation given by the legislature upon the extent of insurance protection they wished the public to have.

200 N.W.2d at 894. Chapter 321A does not evidence a legislative intent consistent with Farm & City's broad public policy argument.

### III. *Public Policy—Case Law.*

Farm & City next contends that several of this court's recent decisions constitute a general pronouncement that courts should protect individuals and the public generally from the financial burdens imposed by automobile accidents. It cites as examples of such a broad public policy the cases of *Shook v. Crabb,* 281 N.W.2d 616 (Iowa 1979) (abrogating interspousal immunity), *Bierkamp v. Rogers,* 293 N.W.2d 577 (Iowa 1980) (guest statute violates Iowa constitution), and *Turner v. Turner,* 304 N.W.2d 786 (Iowa 1981) (abrogating absolute parental immunity). Those cases do remove certain common law and statutory restrictions which previously foreclosed some persons from seeking recovery for personal injuries in motor vehicle and other mishaps. They do not, however, declare a judicial policy requiring automobile insurers to reimburse all persons injured by negligent operators of insured vehicles. It is noteworthy that in *Shook,* the first of the cases upon which Farm & City relies, we said:

> We first note that the terms of insurance policies are, or can be, controlled by the parties. To the extent that insurance companies fear collusive actions, they can either limit the scope of coverage or make appropriate adjustments in premiums.

281 N.W.2d at 620.

Our legislature has expressed in chapter 321A an intent to allow motorists considerable freedom to decide what automobile liability coverage, if any, they wish to procure. That freedom to contract is also highlighted in our cases. "The freedom of individuals to contract is not taken lightly by this court." *Skyline Harvestore Systems v. Centennial Insurance Co.,* 331 N.W.2d at 109.

We do not find in Iowa statutes and case law the overriding public policy through which Farm & City would have us nullify American Family's exclusionary clause.

### IV. *Public Policy—Decisions From Other States.*

Finally, Farm & City asks that we follow the lead of those courts in other states which have invalidated exclusion clauses similar to that in American Family's policy. We decline to do so for several reasons.

First, we distinguish the cases from states which have mandatory automobile insurance laws. *See, e.g., Bishop v. Allstate Insurance Co.,* 623 S.W.2d 865 (Ky.1981); *Community Service Insurance Co. v. Shears,* 89 Mich.App. 372, 280 N.W.2d 532 (1979).

Neither are we persuaded that we should adopt the holding or rationale in *Mutual*

*Enumclaw Insurance Co. v. Wiscomb,* 97 Wash.2d 203, 643 P.2d 441 (1982), *affirming on rehearing* 95 Wash.2d 373, 622 P.2d 1234 (1980). There, the Washington Supreme Court invalidated on public policy grounds a family exclusion clause, but that case is distinguishable for two reasons: no insurance policy without that clause was available in the state of Washington; and the Washington court had previously recognized a "strong public policy of assuring protection to the innocent victims of automobile accidents." *Mutual of Enumclaw Ins. Co. v. Wiscomb,* 643 P.2d at 443 (citing *Touchette v. Northwestern Mutual Insurance Co.,* 80 Wash.2d 327, 332, 494 P.2d 479 (1972)). Here, Farm & City has neither contended nor established that all automobile insurance policies issued in Iowa contain the challenged exclusionary clause. Furthermore, our statutes and decided cases disclose no such broad public policy as was relied upon by the Washington Supreme Court.

■ The trial court correctly refused to invalidate on public policy grounds the exclusionary clause in American Family's automobile liability insurance policy.

AFFIRMED.