**Charlie G. FREEMAN, Appellant,**

v.

**SCHMIDT REAL ESTATE & INSURANCE, INC., Niels R. Schmidt, and AID Insurance Company, Appellees.**

**No. 84–1227.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 9, 1984.

Decided Feb. 20, 1985.

Rehearing Denied March 25, 1985.

Heaney, Circuit Judge, filed dissenting opinion and would have granted rehearing.

Simmons, Perrine, Albright & Ellwood, James R. Snyder, Gregory M. Lederer, Cedar Rapids, Iowa, for appellees Schmidt Real Estate & Ins., Inc.

Crawford, Sullivan, Read & Roemerman, James W. Crawford, Thomas B. Read, Cedar Rapids, Iowa, for appellee AID Ins. Co.

Max E. Kirk, Ball, Kirk, Holm & Mardini, P.C., Waterloo, Iowa, for appellant.

Before HEANEY, Circuit Judge, HENLEY, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

Charlie G. Freeman appeals from a summary judgment entered against him in his action against Schmidt Real Estate & Insurance, Inc., Niels R. Schmidt, and AID Insurance Company for their negligent failure to procure liability insurance for Russell K. Catron. Freeman and Catron were involved in an automobile collision, and in settlement of the resulting litigation, Catron confessed judgment and assigned his rights against the agent, agency and insurance company to Freeman in exchange for Freeman's promise not to execute on the judgment. Freeman then brought this suit alleging both the assigned claim that the agent and insurer had breached their duty to Catron to procure insurance and a direct claim that those same parties had breached an independent duty to him in failing to meet Catron's request. The magistrate[1] rejected the existence of such an independent cause of action and also concluded that Freeman, because of the agreement not to execute and the "indemnity nature" of insurance generally, gained no enforceable rights through the assignment from Catron. We affirm.

Catron in the fall of 1978 had had a conversation with Niels Schmidt in which Schmidt allegedly agreed on behalf of his agency and AID Insurance Company to procure a $300,000 automobile liability policy protecting Catron from losses resulting from the use of his vehicles. On November 16, 1978, a vehicle owned by Catron and operated by Mrs. Catron was involved in a collision in which Charlie Freeman was injured. Freeman brought suit against the Catrons, invoking federal diversity jurisdiction. AID defended the action under a previously issued, undisputed $50,000 liability policy, with a reservation of rights denying coverage in excess of that amount.

---

[1] The Honorable James D. Hodges, United States Magistrate for the Northern District of Iowa. The parties consented to the assignment to a magistrate pursuant to 28 U.S.C. § 636(c) (1982).

The case was settled on the following terms:

1. The Catrons confessed judgment for $350,000.00 and costs,

2. Freeman agreed not to execute against the Catrons on any amount of the judgment in excess of $50,000.00,

3. [AID paid its $50,000.00 liability limits to Freeman], and

4. [T]he Catrons assigned to Freeman their cause of action against the Schmidt agency and any other necessary person or entity for the agency's failure to obtain a $300,000.00 policy that would have covered the liability asserted against them by Freeman.

*Freeman v. Schmidt Real Estate & Insurance, Inc.*, No. C 82–78, slip op. at 3 (N.D. Iowa Feb. 2, 1984).

Thereafter, Freeman brought this action alleging as the Catrons' assignee that Schmidt, the agency, and AID (hereafter "the insurers") were negligent and breached an oral contract in failing to obtain the additional liability insurance policy in the amount of $300,000. Freeman further alleged that the insurers' failure constituted a negligent breach of a duty owed directly to him as the victim of an automobile collision who would foreseeably be harmed by the Catrons' lack of coverage.

The magistrate granted summary judgment for the insurers. While observing that no Iowa case (the parties agree Iowa law controls) was directly on point, he went on to state:

It is equally clear that an insurance contract is basically a contract of indemnity. Hence, since the Catrons never became legally obligated to make any payments to plaintiff by virtue of the covenant not to execute they would have been entitled to nothing under the policy and hence have suffered no damage. Accordingly, plaintiff received no enforceable rights from them and the fact that the underlying obligation was not extinguished is irrelevant.

*Freeman,* slip op. at 6. The magistrate also ruled that under Iowa law potential future victims of possible automobile accidents do not constitute a discernible class as to whom a tortfeasor whose duty is created by contract may be liable despite the lack of privity.

In diversity cases we ordinarily accord substantial weight to the decisions of experienced district judges on questions of local law which have not yet been treated by state courts. *Keltner v. Ford Motor Co.,* 748 F.2d 1265, 1267 (8th Cir.1984); *Kansas State Bank v. Citizens Bank,* 737 F.2d 1490, 1496 (8th Cir.1984). We have earlier stated that bankruptcy judges' conclusions are entitled to some deference as to questions of purely local law, *Grenz Super Valu v. Fix,* 566 F.2d 614, 615 (8th Cir.1977) (per curiam), and we feel no hesitation in considering similarly that weight also should be given to comparable decisions of magistrates. The magistrate's order here carefully analyzes the applicable law, and our research reveals no relevant precedents not fully examined by him. *See Schuster v. U.S. News & World Report, Inc.,* 602 F.2d 850, 854 (8th Cir.1979). We cannot conclude that the magistrate's prediction of Iowa law is erroneous.

## I.

As the magistrate recognized, states differ as to whether an insurer may be liable to the injured party when the insured before judgment is protected by an agreement not to execute. Cases reaching the result urged by Freeman basically follow one of two rationales.

First, under the typical liability insurance policy, an insurer must reimburse the insured only as to amounts which the insured "shall become legally obligated to pay as damages." A covenant not to execute, some courts hold, is merely a contract, and not a release, such that the underlying tort liability remains and a breach of contract action lies if the injured party seeks to collect his judgment. Thus, the tortfeasor is still "legally obligated" to the injured party, and the insurer still must make good

on its contractual promise to pay. *State Farm Mutual Automobile Insurance Co. v. Paynter*, 122 Ariz. 198, 593 P.2d 948, 953 (Ct.App.1979); *Globe Indemnity Co. v. Blomfield*, 115 Ariz. 5, 562 P.2d 1372, 1375 (Ct.App.1977); *cf. Critz v. Farmers Insurance Group*, 230 Cal.App.2d 788, 41 Cal. Rptr. 401, 410 (1964) (agreement holding tortfeasor harmless as to judgment in excess of his insurance coverage doesn't foreclose suit against insurer for bad-faith failure to settle). An uninsured party would then be injured by the agent's negligence in failing to procure a policy because he would have the outstanding "liability" against which he sought to insure.[2]

The policy rationale used by other states reaching the result urged by Freeman focuses primarily on the right of the insured to protect himself from bad faith conduct of his insurer. For example, the Nebraska Supreme Court has held that an insured, and thus the insurer, is "legally obligated to pay" within the meaning of the policy despite an agreement not to execute when the insured enters into such an agreement to protect himself from the insurer's denial of coverage and refusal to defend under the policy. *Metcalf v. Hartford Accident & Indemnity Co.*, 176 Neb. 468, 126 N.W.2d 471 (1964). The Nebraska court stressed that the insurer had "repudiated its obligation" to the insured, *id.*, 126 N.W.2d at 476, and some element of misconduct by the insurer generally has been present in the cases in which courts have followed *Metcalf. E.g., American Family*

*Mutual Insurance Co. v. Kivela*, 408 N.E.2d 805, 813 (Ind.Ct.App.1980) (insurer "abandoned" insured when it refused to defend on the ground that the policy had been revoked for false statements on the application); *Griggs v. Bertram*, 88 N.J. 347, 443 A.2d 163 (1982) (insurer failed to promptly notify insured that it was denying coverage). Even those courts which base their findings of liability on the distinction between a release and a covenant not to execute acknowledge the policy implications of an opposite conclusion—settlements such as the one here would no longer serve their intended purpose. *E.g., Paynter*, 593 P.2d at 953.

Cases reaching the result urged by the insurers here give the "legally obligated to pay" language the practical construction adopted by the magistrate: An insured protected by a covenant not to execute has no compelling obligation to pay any sum to the injured party; thus, the insurance policy imposes no obligation on the insurer. *Stubblefield v. St. Paul Fire & Marine Insurance Co.*, 267 Or. 397, 517 P.2d 262, 264 (1973) (en banc); *Bendall v. White*, 511 F.Supp. 793, 795 (N.D.Ala.1981); *Huffman v. Peerless Insurance Co.*, 17 N.C.App. 292, 193 S.E.2d 773, 774, *cert. denied*, 283 N.C. 257, 195 S.E.2d 689 (1973).[3] An individual who is uninsured due to an agent's negligence then will have suffered no damages, as he would have had no rights under the policy anyway. While this interpretation does prevent use of settlements such as that entered into by the parties here, we

---

2. *Liability* insurance, which is the most common form of automobile insurance and is apparently what Freeman sought here, is to be distinguished from *indemnity* insurance, under which the insurer has no duty to reimburse until the insured has actually *paid out* money, rather than just when the insured becomes "obligated" to pay. *See Steffens v. American Standard Ins. Co.*, 181 N.W.2d 174, 175, 176 (Iowa 1970).

3. It is not clear that *Kelly v. Williams*, 411 So.2d 902, 904 (Fla.Dist.Ct.App.), *petition for review denied*, 419 So.2d 1198 (Fla.1982), belongs with this group of cases, as cited by the insurers. *Kelly* held that an insurer cannot be liable on a third-party claim of bad-faith failure to settle when its insured is protected by agreement

from an excess judgment. The court, however, also distinguished the situation where the injured party brings suit as the insured's assignee rather than asserting a direct claim and suggested that the judgment against the insured would not be "blotted out" because it could affect credit and title to real estate. *Id.* This latter statement seems more in keeping with those cases above that hold that an insured protected by an agreement not to execute does still have legal liabilities and damages giving rise to an obligation on the part of the insurer. Furthermore, another Florida District Court of Appeal panel certified its opinion in *Fidelity & Casualty Co. v. Cope*, 444 So.2d 1041, 1046 (Fla.Dist.Ct.App. 1984), as being in direct conflict with *Kelly*.

agree with the magistrate that Iowa public policy does not require a different result in this case.

Injured parties in Iowa have available other means whereby they may, after obtaining a judgment against an insured, gain the insured's rights against the insurer. *E.g., Steffens v. American Standard Insurance Co.*, 181 N.W.2d 174 (Iowa 1970) (injured party after obtaining and executing a judgment against insured could levy on insured's cause of action against insurer and purchase it at a sheriff's sale). The issue, therefore, is whether the additional procedure of prejudgment assignment in return for a promise not to execute also should be available. Iowa's concerns with permitting such a procedure are apparent from cases that erect barriers against possibility of collusive settlement. For example, in *Roach v. Estate of Ravenstein*, 326 F.Supp. 830 (S.D.Iowa 1971), the experienced District Judge Hanson denied a motion for a consent judgment where the settlement involved assignment by the administrator of the deceased insured's rights against the insurer in exchange for the injured party's agreement to seek satisfaction of the judgment only from the estate's rights in the insurance policy. The court held that the agreement was beyond the authority of the administrator due to the administrator's failure to investigate the merits of the claim against the insured or to seek necessary probate court approval and that the agreement was unconscionable as forcing the insurer to either forgo a good-faith denial of coverage or risk being bound by any settlement the insured might choose to make. The court expressly found that the purpose of the settlement had been to "relieve the Plaintiff from the burden of proving its claim and establishing the liability of the Defendant estate and to prevent a defense by the insurer." *Id.* at 834. Plaintiff's counsel had actually been directing the administrator's activities. Such collusion, however, would be possible anytime the insured were protected by an agreement not to execute prior to entry of judgment; the insured thus loses the incentive to contest his liability or the extent of the injured party's damages either in negotiations or at trial.

Furthermore, the policy concerns that cause some states to allow such settlements are less pressing when the claim against the insurer is to be negligent failure to procure insurance rather than bad faith refusal to settle or to defend. Insureds and injured parties alike may need the possibility of an assignment and covenant not to execute as a weapon against insurer misconduct surrounding claims made under the policy. *Cf. Critz v. Farmers Insurance Group*, 230 Cal.App.2d 788, 41 Cal.Rptr. 401, 408–09 (1964). When the insurer's breach of its obligations, however, is merely negligent and is removed in time and nature from the settlement context, such agreements will have less deterrent effect on insurer practices, and their possible usefulness in this regard is outweighed by the concern with collusion. We cannot find the magistrate was incorrect in his conclusion that Iowa courts would read the "legally obligated to pay" policy language to protect insurers when their insureds are protected by prejudgment covenants not to execute.

## II.

We also agree with the magistrate that Iowa courts would not find a duty running from insurance agents to potential injured parties such as to give Freeman a direct cause of action against the insurers here for negligence in failing to procure insurance for Catron. The seminal Iowa case is *Ryan v. Kanne*, 170 N.W.2d 395 (Iowa 1969), in which the state supreme court for the first time recognized that professionals might have some duty of care running to persons other than those who contracted for their services. The court held that an accountant making a negligent misrepresentation could be liable to a person who suffered loss in reliance on the false statement and who was known to the accountant as a prospective user. *Id.* at 401–03. The court found it unnecessary to determine whether such liability should ex-

tend to all foreseeable persons, but it did say the scope of the duty should be influenced by "the end and aim of the transaction." *Id.* at 403.

Later Iowa Supreme Court opinions have reaffirmed the concern with potentially unlimited liability, *e.g., Brody v. Ruby,* 267 N.W.2d 902, 906 (Iowa 1978), and our district judges on previous occasions also have refused to give *Ryan* an expansive reading. *See Briggs v. Sterner,* 529 F.Supp. 1155, 1176–77 (S.D.Iowa 1981). The duty of professionals runs not to all reasonably foreseen injured parties but just to those actually foreseen "taking into consideration the end and aim of the transaction." *Beeck v. Kapalis,* 302 N.W.2d 90, 97 (Iowa 1981).

The aim of the alleged transaction between Catron and the insurance agent Schmidt was to protect *Catron* and to protect him from *liability.* In states where insurance agents have been held to have a duty to potential injured parties, insurance as a matter of public policy generally is characterized as creating a "fund" to compensate accident victims. *E.g., Eschle v. Eastern Freight Ways,* 128 N.J.Super. 299, 319 A.2d 786, 787 (Law Div.1974). We have been cited to no materials showing that Iowa has adopted such a view, and *Walker v. American Family Mutual Insurance Co.,* 340 N.W.2d 599 (Iowa 1983), in fact, has strong language to the contrary.[4] Furthermore, the Iowa Supreme Court in *Long v. McAllister,* 319 N.W.2d 256, 262 (Iowa 1982), declined to recognize a duty of an insurer directly to the injured party to settle in good faith, stressing that the interests of an insured and insurer are aligned against the interests of the injured party. A more expansive concept as to the purposes of automobile liability insurance in Iowa would contradict our recognition in section I, *supra,* of this opinion that an

insurer has an obligation to pay money under a policy only after the insured has incurred *liability.* The "ends and aim" of the insurance transaction contemplate a duty only to others, for example, possibly Catron's wife, who would have been protected under the policy as to *their liability. Cf. Waddell v. Davis,* 571 S.W.2d 844 (Tenn.Ct.App.1978) (plaintiff had a direct action as a third-party beneficiary against the insurance agent for negligent failure to procure uninsured motorist coverage if, as passenger in car, she would have been an "insured" within the meaning of the policy sought by her driver).

This focus similarly distinguishes the Massachusetts case of *Rae v. Air-Speed, Inc.,* 386 Mass. 187, 435 N.E.2d 628 (1982), heavily relied upon by Freeman. The insurance sought there was workers' compensation insurance, which by its very nature and purpose does not require that an injured employee establish liability on the part of the employer before recovering. The essence of workers' compensation is protection of workers from injuries and not protection of employers from liability; thus, when an employer approaches an insurance agent about workers' compensation, employees are "actually foreseen" parties within the "end and aim of the transaction" to whom the agent would owe a duty under Iowa law. The Massachusetts court, in fact, found the employees to be third-party beneficiaries of the contract to obtain workers' compensation insurance, *id.,* 435 N.E.2d at 633, while the Iowa Supreme Court in contrast has found injured parties *not* to be third-party beneficiaries of automobile liability policies. *Long,* 319 N.W.2d at 262. The magistrate did not err in his conclusion that Iowa courts similarly would not extend the liability of insurers to the situation here.

---

**4.** In *Walker,* the Iowa Supreme Court declined to invalidate an exclusionary clause in an insurance contract as against public policy. The court stressed that the legislature had not enacted a compulsory insurance law and made the following observations: "Our more recent decisions * * * [find] no legislative intent to require all motorists to have liability insurance and therefore no legislative expression of a public policy to protect all victims of traffic accidents,"

340 N.W.2d at 601; "[The cases cited] do not, however, declare a judicial policy requiring automobile insurers to reimburse all persons injured by negligent operators of insured vehicles," *id.* at 602; "[O]ur statutes and decided cases disclose no such broad public policy [of 'assuring protection to the innocent victims of automobile accidents'] as was relied upon by the Washington Supreme Court." *Id.* at 603.

Since we conclude, as matters of law, first that the claim assigned to Freeman was not enforceable because Catron was not "legally obligated to pay" any judgment and thus had no rights against his insurers, and second that Iowa would not recognize a direct action by a crash victim against an insurer for failure to procure automobile liability insurance for the tort-feasor, the summary judgment in favor of the insurers must be affirmed.

HEANEY, Circuit Judge, dissenting.

I respectfully dissent. While I do not disagree with the majority's conclusion that decisions of a magistrate should be given weight, I cannot agree that he correctly resolved the legal issue in the case. In my view, the Iowa state courts would be more likely to follow the views of those states that would permit recovery than those that would not. Of course, in any action, the insured would have to prove his damages and the insurer would have a right to assert any defense that it might have had if the insurance had been purchased as requested. This simple safeguard would prevent any collusive settlement.

There are no policy reasons to deny relief to the plaintiffs. To the contrary, the negligent insurer should bear the responsibility rather than the innocent plaintiff.