David DeVETTER, Appellant,

v.

PRINCIPAL MUTUAL LIFE INSURANCE CO., f/k/a the Bankers Life, Appellee.

No. 91–1039.

Supreme Court of Iowa.

May 25, 1994.

Rehearing Denied June 17, 1994.

David DeVetter, pro se.

Eric F. Turner of Herrick, Langdon & Langdon, Des Moines, for appellee.

Considered by McGIVERIN, C.J., and LARSON, CARTER, NEUMAN, and SNELL, JJ.

McGIVERIN, Chief Justice.

This case involves a challenged clause in a group disability insurance policy. The provision starts the accrual of benefits on a date no earlier than six months preceding the time that written proof of claim is furnished to the insurer. The main question is whether the clause violates public policy. The district court concluded that it did not, but the court of appeals reversed, holding that it did. We vacate the decision of the court of appeals and affirm the judgment of the district court.

I. *Background facts and proceedings.* Defendant Principal Mutual Life Insurance Company (Principal) issued a group long-term disability insurance policy to the Camanche Community School District on July 1, 1973. The policy remained in effect at all material times. Plaintiff David DeVetter obtained employment with the school district for the 1979–80 school year and by reason of his employment became an insured under the Principal policy. Plaintiff left his employment with the school district effective January 18, 1980, at which time he was totally disabled due to a mental ailment. About seven and one-half years later, on July 22, 1987, plaintiff DeVetter filed a group disability claim form with defendant Principal.

Although plaintiff's 1987 filing of notice of claim was untimely, section 10 of the policy contained a clause allowing late filed claims. The clause provided:

> Failure to furnish notice or proof within the time fixed in this Policy will not invalidate or reduce any claim if it shall be shown that it was not reasonably possible to furnish such notice or proof on time and that it was furnished as soon as was reasonably possible.

Defendant concedes that plaintiff DeVetter's late filing satisfied the conditions of this clause.

Because this dispute involves the question of when disability benefits started to accrue under the policy, the operation of the policy must be explained.

Under section 10 of the policy, DeVetter first became eligible to file for benefits on May 23, 1980. This date marked the end of the "qualifying period"—that is, the eighteen-week period following the onset of the disability (here, January 18, 1980) during which the disability continued uninterrupted. This period of eligibility to file a claim ran for three months, until August 15, 1980. Any filing after that, including plaintiff's filing on July 22, 1987, had to meet the standards of section 10's "failure to furnish notice" clause discussed above.

The parties agree plaintiff's claim was furnished as soon as was reasonably possible and therefore satisfied the standards of section 10. The question then arose concerning the period for which disability benefits would be paid.

Section 12 of the policy provided in part:

> Monthly income accrues commencing on the day immediately following the date of completion of the qualifying period, *but in no event prior to the date six months preceding the date written proof of such total disability is furnished to the Company* at its Home Office in Des Moines, Iowa.

(Emphasis added.)

In addition, section 12 contained prospective limits on the accrual of benefits. It prospectively limited benefits upon the occurrence of one of several conditions, such as the ceasing of the disability, the death of the beneficiary, or, as here, the expiration of 60 months of total disability.

Section 12's retroactive provision, the clause at issue in this case, limited the accrual of monthly income benefits to six months preceding the date written proof of the disability was furnished to Principal at its home office in Des Moines. This provision applied no matter when the claim was filed.

The next question concerned the amount of the disability income benefits to be paid. The policy integrated disability income benefits payable under the policy with the social security benefits that a claimant and any of his dependents were eligible to receive. Section 13 of the policy provided a scheduled monthly income benefit equal to 60% of the claimant's monthly compensation at the time of the onset of the disability, less the social security benefits. If the social security benefits exceeded 60% of the claimant's monthly

compensation, section 16 of the policy still provided the claimant a minimum monthly benefit of $50.

Defendant Principal computed plaintiff De-Vetter's benefits as follows. Plaintiff's claim was filed with defendant insurer on July 22, 1987. Under section 12 of the policy his benefits commenced on January 22, 1987, or six months before he filed his claim.

Applying section 13 of the policy, defendant Principal thus determined plaintiff was entitled to benefits for the period starting January 22, 1987 and for 60 months thereafter. Plaintiff's monthly income upon becoming disabled was $1,385 per month, 60% of which is $831. The social security benefits of plaintiff and his dependents, which began to pay out effective October 1982, were $865 per month. Because the social security benefits exceeded the policy's disability benefits, defendant Principal concluded that plaintiff was entitled under section 16 of the policy to the minimum benefit of $50 per month for the 60 month benefit period.

Plaintiff contends his disability benefits from defendant Principal should have been started on May 24, 1980. This would mean that his benefits from defendant Principal would begin to run nearly two and one-half years before his social security benefits began to accrue. This earlier commencement of benefits from Principal would entitle plaintiff to receive over $30,000 from defendant, because for the period from January 1980 to October 1982, Principal would not be able to offset its obligation to DeVetter against De-Vetter's social security benefits.

Plaintiff filed a petition seeking damages against defendant Principal based on a theory of breach of contract. Defendant filed a motion for summary judgment. The district court sustained defendant's motion. The court agreed with defendant's interpretation of the insurance policy under the record and dismissed plaintiff's petition.

Plaintiff appealed. We transferred the case to the court of appeals, which reversed the district court.

We granted further review.

■ Our review of an order granting summary judgment is for correction of errors at law. Iowa R.App.P. 4. To sustain a motion for summary judgment, the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, must show that there is no issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Iowa R.Civ.P. 237(c); *Keller v. State*, 475 N.W.2d 174, 179 (Iowa 1991). The record in this case consisted of the pleadings, the motion, affidavits, exhibits, and answers to interrogatories. The parties do not dispute the facts, only the legal interpretation of the insurance policy provisions. This is a matter of law to be resolved by the court. *Farm Bureau Mut. Ins. Co. v. Sandbulte*, 302 N.W.2d 104, 107 (Iowa 1981).

II. *Public policy argument.* DeVetter argues that the six-month retroactive provision in this insurance policy, which started disability payments at most six months prior to the filing of any claim, violates public policy. The district court disagreed, concluding that "no clearly articulated public policy of the State of Iowa prohibit[s] the use of a six-month retroactive limitation provision in a group disability policy." The court concluded that the policy does not work a forfeiture against mentally disabled persons.

The court of appeals reversed, holding that the provision violated public policy and that the policy would work a forfeiture on mentally disabled persons.

■ The power to invalidate a contract on public policy grounds must be used cautiously and exercised only in cases free from doubt. *Walker v. American Family Mut. Ins. Co.*, 340 N.W.2d 599, 601 (Iowa 1983). For a court to strike down a contract on these grounds, it must conclude that the preservation of the general public welfare imperatively so demands invalidation so as to outweigh the weighty societal interest in the freedom of contract. *Id.*

■ A. We believe the policy provision is consistent with the public policy of the state of Iowa. As the district court concluded, we believe no clearly articulated public policy of the state of Iowa prohibits the use of a six-

month retroactive limitation provision in a group disability policy.

■ On the contrary, public policy favors providing low cost group disability insurance to citizens through predictable underwriting and premium structures. *See, e.g., William C. Brown Co. v. General Am. Life Ins. Co.,* 450 N.W.2d 867, 871 (Iowa 1990) ("Reasons that justify the use of [coordination of benefits] provisions [in group insurance policies] include the following: (1) preventing the insured from recovering more than is necessary to make the insured whole; (2) keeping premium rates as low as possible while assuring full compensation to the group policy holder; and (3) reimbursing employees for their medical expenses while at the same time not enabling them to profit from their illness or injuries."); *Steve D. Thompson Trucking, Inc. v. Twin City Fire Ins. Co.,* 832 F.2d 309, 310–11 (5th Cir.1987) (court may consider what risks are reflected in an insured's premium and what effect an alteration of policy terms would have upon the risk for which the insurer contracted and for which premiums are charged); *Zurich Ins. Co. v. Heil Co.,* 815 F.2d 1122, 1126 (7th Cir.1987) (same).

This clause allows such predictability and affords evenhanded coverage to all persons and all claims, regardless of status.

Moreover, the public policy of the state disfavors liability based on unreliable or unavailable evidence. *See, e.g.,* Iowa Code ch. 614 (1993) (statutes of limitations); *Schulte v. Wageman,* 465 N.W.2d 285, 286 (Iowa 1991) (explaining purpose of statute of limitations). The clause here furthers this important state interest.

B. Plaintiff cites *Levitt v. New York Life Insurance Co.,* 230 Iowa 456, 461, 297 N.W. 888, 892 (1941), and *McCoy v. New York Life Insurance Co.,* 219 Iowa 514, 518, 258 N.W. 320, 322 (1935), in which we held that a condition precedent in an insurance contract requiring notice or proof of disability is excused where performance is impossible because of the physical or mental incapacity of the insured. We concede that these cases evince a general concern for the protection of insureds against the consequences of their incapacity. However, they provide little guidance in a case such as this in which the insurer specifically provided a clause allowing a disabled insured to file late but in another clause limited retroactive benefits applicable to all claimants.

Plaintiff points to *Chagnon v. Metropolitan Life Insurance Co.,* 96 N.H. 256, 75 A.2d 167, 169–70 (1950), in which the court invalidated a similar clause that imposed a six-month retroactive limitation on disability benefits. The court reasoned: "Strict compliance with the contract is not enforced where it would produce a forfeiture so that the insane are protected from the results of their own incapacity." *Id.* at 259, 75 A.2d at 169–70. Although we acknowledge the *Chagnon* court's concern for the protection of mentally disabled persons, we believe that the policy in this case adequately protected this interest.

First, at the time *Chagnon* was decided, the social security act did not provide the disability benefits that DeVetter received. Such benefits were available for the first time in 1956. *See* Social Security Act of 1956, Pub.L. No. 880, § 103(a), 70 Stat. 807, 815 (1956) (codified at 42 U.S.C. § 423 (1988)). Indeed, prior to 1958, the social security act provided no retroactive benefits. *See* Social Security Amendments of 1958, Pub.L. No. 85–840, § 202(a), 72 Stat. 1020 (1958); *Yeiter v. Secretary of Health & Human Servs.,* 818 F.2d 8, 9 (6th Cir.), *cert. denied,* 484 U.S. 854, 108 S.Ct. 160, 98 L.Ed.2d 115 (1987). Therefore, enforcing the six-month retroactive clause in this case imposes a substantially smaller burden on DeVetter than it would have on the plaintiff in *Chagnon,* who could get no social security disability benefits, retroactive or otherwise.

Second, unlike the policy before us, the policy in *Chagnon* contained no clause that allowed late filing of claims. We believe that the policy here manifested an intention on the part of defendant Principal to protect the mentally disabled from the results of their own incapacity, but in a way that also took into account the costs that such protection, if taken to extremes, would impose on beneficiaries as a whole.

■ Third, we disagree with the plaintiff that the operation of this clause works a

forfeiture of his rights under the policy. A forfeiture implies the taking away from one of some preexisting right or vested interest. *St. Regis Paper Co. v. Aultman,* 280 F.Supp. 500, 509 (D.Ga.1967), *aff'd per curiam,* 390 F.2d 878 (5th Cir.1968); *Hogg v. Forsythe,* 198 Ky. 462, 248 S.W. 1008, 1011 (1923). Because under the policy plaintiff's benefits did not accrue until 1987 when he filed a claim, he suffered no real forfeiture of the benefits dating to 1982 that he now claims. The retroactivity clause applies equally to all persons regardless of disability. It works a forfeiture on no one.

C. We find analogous support in two recent federal cases that rejected constitutional challenges to the one-year retroactive limitation on the recovery of social security disability benefits in 42 U.S.C. § 423(b) (1988). *Yeiter,* 818 F.2d at 10; *Tusson v. Bowen,* 675 F.Supp. 1032, 1034 (E.D.La.1987), *aff'd per curiam,* 847 F.2d 284 (5th Cir.1988). The plaintiffs in both cases based their challenges on the due process clause of the fifth amendment and the equal protection clause of the fourteenth amendment to the federal constitution.

With respect to the due process argument, the *Tusson* court concluded that the claimant had no vested property interest in the benefits and observed that some person acting on behalf of the mentally impaired person could have filed an application for benefits. *Tusson,* 675 F.Supp. at 1034. As the *Yeiter* court remarked, a caretaker has "a strong incentive to file for benefits." 818 F.2d at 10.

The retroactive limit in 42 U.S.C. § 423(b) also withstood equal protection challenges in both cases. Both courts reasoned that the provision did not single out the mentally disabled; instead, it subjected all claimants to the same limitation period. *Id.* at 10; *Tusson,* 675 F.Supp. at 1035. Therefore, the statute satisfied the rational basis test of *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491, 501 (1970), because of Congress's need "to preserve the fiscal integrity of the social security trust fund." *Tusson,* 675 F.Supp. at 1035 (citing *Yeiter,* 818 F.2d at 10).

Although these cases addressed whether a retroactive limit on benefits violated the fed-eral constitution, not public policy, we believe their analysis reinforces ours.

First, neither the social security claimants in the federal cases nor the plaintiff here had a vested right to benefits. Under due process analysis, this means that a claimant could not claim a property interest in such benefits; under public policy analysis, it means that no forfeiture occurred.

Second, in both situations, the claimant could have had a caretaker file for benefits. A caretaker has the same "strong incentive," *Yeiter,* 818 F.2d at 10, to file for benefits with the beneficiary's private insurer as it does to file with the social security administration.

Third, the policy, like the statute, does not single out the mentally disabled. Plaintiff DeVetter's recovery of reduced benefits from defendant occurred only incidentally to his late filing. Nothing in the policy reduces recovery because of late filing; had plaintiff not filed for social security, for instance, he would have received full recovery from defendant Principal without any subtraction of social security benefits.

Finally, we perceive a close analogy between preservation of the social security trust fund and the societal interest in allowing insurers to make reasonable limits in their policies for underwriting purposes. Just as the invalidation of 42 U.S.C. § 423(b) would endanger the availability of social security disability benefits to society, so would the invalidation of insurance policy clauses such as this endanger the availability of privately contracted disability coverage.

We agree with the district court that defendant Principal's six-month retroactive limitation did not violate public policy. We do not believe this is a case in which "the preservation of the general public welfare imperatively ... demands" striking down this clause on public policy grounds. *Walker,* 340 N.W.2d at 601.

■ III. *Ambiguity.* Plaintiff further argues that the policy terms contained an ambiguity and that we should therefore strike down the six-month limitation clause. Both the district court and the court of appeals

rejected plaintiff's argument. We reject it as well.

Section 10 of the policy states that when notice of a claim is given as soon as is reasonably possible, such a claim will not be invalidated or reduced on the ground that it is untimely. Here, defendant accepted the claim, despite its untimeliness by several years. Plaintiff contends that because section 10 states that late claims will not be reduced, an ambiguity arises when that provision is considered in connection with section 12's six-month limitation concerning the earliest date from which claims will be paid.

█ An ambiguity exists only if there is "genuine uncertainty" regarding the policy's language. *Cairns v. Grinnell Mut. Reins. Co.*, 398 N.W.2d 821, 824 (Iowa 1987). Here, no such uncertainty exists. The policy allowed late filed claims, but all claims were paid from a date no earlier than six months prior to filing. Regardless of this limitation, however, the claimant was entitled to a maximum of 60 months of benefits. Thus, although the policy had a retroactive limit, nothing in the policy reduced claimant's recovery on the basis of his late filing. We see nothing ambiguous about these provisions.

IV. *Disposition.* We have considered the various other contentions raised by plaintiff and have concluded that they either were not preserved or have no merit. Plaintiff's separate motion filed in this court for attorney fees and interest is denied. We therefore vacate the decision of the court of appeals and affirm the judgment of the district court.

**DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT AFFIRMED.**